# EXHIBIT  C

```
1              IN THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF FLORIDA
2
                         MIAMI DIVISION
3
                 CASE NO.:  17-mj-02017-WCT-1
4

5

6

7   UNITED STATES OF AMERICA,     )
                                   )
8                  Plaintiff,      )
    v.                             )
9                                  )           January 9, 2017
    OLIVER SCHMIDT,                )
10                                 )
             Defendant.            )           Pages 1 - 28
11  _____/

12

13

14

15              DETENTION HEARING PROCEEDINGS

16        BEFORE THE HONORABLE WILLIAM C. TURNOFF
                UNITED STATES MAGISTRATE JUDGE
17

18

19

20

21  APPEARANCES:

22
    On behalf of the Plaintiff:
23
                        U.S. DEPARTMENT OF JUSTICE
24                      Criminal Division, Fraud Section,.
                        1400 New York Avenue, W, D.C. 20005
25                      BY:  BENJAMIN D. SINGER, ESQ.
```

```
1
   APPEARANCES CONTINUED:
2

3   On behalf of the Defendant:

4                       RICHARDS KIBBE & ORBE, LLP
                        200 Liberty Street,
5                       New York, NY  10281
                        BY:  DAVID B. MASSEY, ESQ.
6

7

8                       KOBRE & KIM, LLP
                        2 South Biscayne Boulevard
9                       35th Floor,
                        Miami, FL 33131
10                      BY:  JOHN D. COURIEL, ESQ.

11

12  Transcribed By:

13                      BONNIE JOY LEWIS, R.P.R.
                        7001 SW 13 Street
14                      Pembroke Pines, FL  33023
                        954-985-8875
15                      caselawrptg@gmail.com

16

17

18

19

20

21

22

23

24

25
```

3

```
 1              (Thereupon, the following proceeding was held:)
 2         THE COURT:  We are here today in the case of United
 3  States versus Oliver Schmidt 17-02017.  It will be unsealed.
 4         MR. SINGER:  Good afternoon, Your Honor.
 5         Ben Singer appearing on behalf of the Government.
 6         MR. MASSEY:  Good afternoon, Your Honor.
 7         David Massey, Richards Kibbe and Orbe, for Oliver
 8  Schmidt.  With me is John Couriel.
 9         THE COURT:  John Couriel.
10         MR. MASSEY:  Of Kobre and Kim.
11         THE COURET:  I know him.  Are you in that firm or is
12  it a different firm?
13         MR. MASSEY:  I'm in a different firm called Richards
14  Kibbe and Orbe.
15         THE COURT:  Where is that located?
16         MR. MASSEY:  New York City and Washington and London.
17         THE COURT:  We've got local counsel here, right?
18         MR. MASSEY:  Yes, Your Honor.
19         THE COURT:  Who is probably --
20         MR. COURIEL:  Good morning, Your Honor.
21         THE COURT:  I just think that New York is like lesser
22  than Miami.  You know what I mean, but you have great local
23  counsel.
24         MR. MASSEY:  Thank you, Your Honor.
25         THE COURT:  Okay.  All right.  Mr. Schmidt, your name
```

1  and age, please?

2         THE DEFENDANT:  Oliver Schmidt; born January 9, 1969.

3         THE COURT:  All right.  I take it you speak English

4  better than I do, right?

5         THE DEFENDANT:  Yes.

6         THE COURT:  All right.  This is your initial

7  appearance in federal court.

8         You are charged on a warrant on a complaint out of the

9  Eastern District of Michigan with conspiracy by way of summary.

10  We will make the paperwork available to you.

11         Am I right so far, Government?

12         MR. SINGER:  Yes, Your Honor.

13         THE COURT:  Okay.  You have the right to hire your own

14  lawyer.  If you cannot afford to hire a lawyer, I will appoint

15  one for you free of charge.

16         You have the right to consult with your lawyer before

17  answering any questions.

18         You are entitled to a bond hearing.  You may be

19  entitled to relief on bond.  You are not required to make any

20  statement.  Any statement you do make can be used against you.

21         Let me see.  Your next appearance will be here for a

22  removal hearing, at which time, the Government will have to

23  establish that there is probable cause to believe that you

24  committed the crime, which you are charged, in the Eastern

25  District of Michigan and that you are the person named in the

1   complaint there.

2            If they could do that, you will be removed to the

3   Eastern District of Michigan to answer the charges against you.

4            You could also voluntarily go back without a hearing.

5   You could also request that the charges be transferred here to

6   Miami, but that would only be for the purpose of entering a

7   guilty plea.  These are the things that you should discuss with

8   your distinguished lawyers.

9            In the meantime, we will set this matter for a removal

10  hearing for January 23, 2017 at 10:00 a.m.

11           Government, forgive me, are you local or DOJ?

12           MR. SINGER:  DOJ, Your Honor.

13           THE COURT:  Okay.  We think of DOJ as a subdivision of

14  the Southern District of Florida.

15           MR. SINGER:  I understand.

16           THE COURT:  We are an equal opportunity abuser here,

17  okay.

18           All right.  Let me see.  Counsel, are you permanent

19  for Miami purposes at least?

20           MR. SINGER:  I can speak to that, Your Honor.

21           John Couriel is entering a temporary appearance for

22  today's removal and preliminary proceedings.  Mr. Massey will

23  be permanent counsel in this matter.

24           I am here, Your Honor, first and foremost to move his

25  admission pro hac vice and also to assist with today's

```
 1  proceedings.
 2          THE COURT:  Okay.  Let me ask my counsel.
 3          I get it our motion for pro hac vice because these
 4  matters come up in another matters that I could admit him as I
 5  have been doing for 30 years, right?  On the spot, right?
 6          LAW CLERK:  Yes.
 7          THE COURT:  Because he has local counsel to do the
 8  paperwork, right?
 9          LAW CLERK:  (Inaudible.)
10          THE COURT:  Okay.  So foreign counsel has to -- okay.
11  You understand that?
12          MR. MASSEY:  Yes, we do.  We can settle that today,
13  Your Honor.
14          THE COURT:  Okay.  So I will allow that subject to you
15  filling out all the paperwork and paying the dues, I guess,
16  right?
17          MR. COURIEL:  Thank you, Your Honor.
18          THE COURT:  Right?
19          MR. MASSEY:  That's right.
20          THE COURT:  I do not know what happened after I get
21  them, but something else has come up and I inquired as to the
22  administrative procedure.
23          Okay.  And also, there won't be any report re counsel
24  anymore because you are permanent for Miami removal purposes.
25          MR. COURIEL:  That's right, Your Honor.
```

1          THE COURT:  Okay.  So we will save that time and

2   money.

3          Now, what is the recommendation as to bond?

4          MR. SINGER:  Your Honor, we are seeking pretrial

5   detention based on risk of flight.

6          THE COURT:  Are you fellows ready to proceed?

7          MR. MASSEY:  Your Honor, we are ready to ask if Your

8   Honor is willing to consider a sort of temporary bond for a

9   limited purpose in a limited period of time if Your Honor would

10  want to listen for us to be heard on that.

11         THE COURT:  I have been doing this for 30 years and I

12  have never heard of that.

13         MR. MASSEY:  And Your Honor before I --

14         THE COURT:  A temporary bond?

15         MR. MASSEY:  Yes, Your Honor.

16         We would ask that he be permitted to remain on

17  electronic monitoring for a short period of time for a date

18  certain through about Friday under watch of an agent, at which

19  time he would be allowed to travel with an agent to Detroit,

20  the Detroit area, so that the matter could be determined there

21  whether he could be --

22         THE COURT:  Why doesn't he just voluntarily go back to

23  Detroit?

24         MR. MASSEY:  He certainly can if Your Honor will

25  permit him if that would be perfectly fine.  We would waive

1    removal.

2         THE COURT:  Okay.  Right now, until I hear something

3    else, he would be in the custody of the Marshal.

4         Do you follow me?

5         And I am willing to, you know, be flexible here, but I

6    think I want to hear something about this case and, then, make

7    a determination on the whole issue, okay?

8         MR. MASSEY:  All right.

9         THE COURT:  All right.  So, Government, tell me about

10   this case and why you are requesting detention, okay?

11        MR. SINGER:  I will, Your Honor.

12        And just for the record, the Government --

13        THE COURT:  Just so you guys know, if you speak into

14   the microphone everything is being recorded so you have a

15   transcript of it.

16        MR. SINGER:  Your Honor, I will certainly tell you

17   about the case.

18        For the record, the Government would request three

19   days for the detention hearing and let me explain why.

20        THE COURT:  It is not a narcotics case.  So it is not

21   automatic.

22        MR. SINGER:  It is not automatic, Your Honor.  I would

23   agree with you.

24        First of all, Mr. Schmidt was arrested late Saturday.

25   This is an out of district case.  While we do have an agent

9

1   ready to proceed with that hearing, that agent is not a case

2   agent on the case.  It's an agent that is familiar with the

3   case based on his work over the last seven days and so he has

4   limited familiarity with the case.

5           THE COURT:  What is the case about?

6           MR. SINGER:  The case is about, Your Honor, one of the

7   largest corporate frauds, I think in at least recent history.

8           Mr. Schmidt, along with a number of other

9   co-conspirators, conspired to deceive U.S. regulators and U.S.

10  customers of Volkswagen about their emissions.

11          This involves the importation and sale of about

12  600,000 cars that contained illegal software that was designed

13  to conceal a fact that they were emitting very dangerous

14  pollutants into the atmosphere in violation of U.S.

15  regulations.

16          THE COURT:  I just read the headlines and you are

17  saying that there was active software to defeat the regulatory

18  requirements?

19          MR. SINGER:  Yes, Your Honor.

20          THE COURT:  Okay.

21          MR. SINGER:  Mr. Schmidt was an executive at

22  Volkswagen was in charge of emissions compliance for Volkswagen

23  in the United States from a period of approximately 2012 to

24  March of 2015.

25          In March of 2015, Mr. Schmidt received a promotion and

10

1    went back to the company's headquarters in Wolfsburg Germany

2    where he served as a deputy to one of the most senior

3    executives at the company in his capacity both as in charge of

4    this office in the Eastern District of Michigan that dealt with

5    compliance and emission issues.

6            And when he returned to Germany, Mr. Schmidt was part

7    of the conspiracy in that he and others essentially lied to

8    U.S. regulators well over a year when U.S. regulators thought

9    that they may have discovered cheating.

10           Mr. Schmidt flew, at least on one occasion, from

11   Germany after he had gone back to the U.S. specifically to meet

12   with U.S. regulators and he lied to them in order to continue

13   the scheme.

14           So, Mr. Schmidt, for purposes of the complaint, is

15   charged with one count of conspiracy.  We anticipate an

16   indictment will be forthcoming that will charge him with

17   additional substantive counts of wire fraud.

18           He is looking at, at least under the guidelines,

19   essentially, life in prison based on his exposure under the

20   guidelines because the losses in this case, Your Honor, are in

21   the billions.

22           THE COURT:  In the what?

23           MR. SINGER:  In the billions with a B.

24           THE COURT:  How are the losses defined?

25           MR. SINGER:  Your Honor, there is a specific

11

1   application known in the guidelines that deals with this type

2   of offense.

3           THE COURT:  All right.

4           MR. SINGER:  It's basically the full value of the

5   vehicles sold in the United States which exceeds ten billion

6   dollars.

7           THE COURT:  Okay.  So that is the criminal penalty,

8   right?

9           MR. SINGER:  That is correct, Your Honor.

10          THE COURT:  That's interesting.

11          MR. SINGER:  Obviously, a Court will determine a

12  sentence if Mr. Schmidt would be convicted.

13          THE COURT:  I did not realize that because all I read

14  in scanning the news is that Volkswagen -- correct me if I am

15  wrong -- they made good on the problem, correct?

16          Volkswagen took with respect to customers and the cars

17  involved?

18          MR. SINGER:  Volkswagen, has reached a civil

19  settlement.

20          THE COURT:  Okay.

21          MR. SINGER:  In which they've paid or agreed to pay

22  something like 16 billion dollars in remediation to customers.

23          THE COURT:  Right.

24          MR. SINGER:  And to the sort of environmental damage.

25          THE COURT:  So that is on the civil side and not the

12

1  end of the story.

2          MR. SINGER:  That's right.

3          THE COURT:  There is a criminal component.

4          MR. SINGER:  That's right, Your Honor.

5          THE COURT:  Okay.  Now, with respect to the Bail

6  Reform Act, all the factors that I am required to consider, of

7  course, we have the nature of the offense.

8          And we have the fact that he has ties to Germany,

9  correct?

10         MR. SINGER:  Yes, Your Honor.

11         THE COURT:  What else should I consider with respect

12 to your request for pretrial detention?

13         MR. SINGER:  Your Honor, there is a couple of factors.

14         THE COURT:  Okay.

15         MR. SINGER:  First, with respect to Germany, Germany

16 is a country, that according to essentially its version of the

17 Constitution, will not extradite its own citizens and that is a

18 non waivable provision.  So, if Mr. Schmidt would be able to

19 return to Germany, he would not be extraditable.

20         THE COURT:  That's part of the Constitution?

21         MR. SINGER:  It is --

22         THE COURT:  Did we help to write that Constitution?

23         MR. SINGER:  I believe we may have, Your Honor.

24         So, obviously, we believe that the case is a very

25 significant one.  He has significant exposure.

1        THE COURT:  Right.

2        MR. SINGER:  I'm happy to walk through the strengths

3    of the Government's evidence and we believe we have strong

4    evidence.

5        THE COURT:  Well, it is a serious charge.  Does he

6    have any prior record?

7        MR. SINGER:  He doesn't, Your Honor.

8        THE COURT:  Okay.

9        MR. SINGER:  At least not that we're aware of.

10        THE COURT:  How about his assets?

11        MR. SINGER:  Your Honor, we are not aware of anything

12    linking Mr. Schmidt to this country.

13        Except we believe there may be a property in Florida

14    that we understand -- we're still trying to track that down,

15    which is another reason we wouldn't mind a little time.

16        We understand that it is about a $100,000 in at least

17    assessed value that he does have a property here in the

18    Southern District of Florida, but it is not, I think, his

19    residence.

20        THE COURT:  $100,000 of value could probably be a

21    swamp.

22        MR. SINGER:  I think it's a single family residence,

23    Your Honor, but we believe someone is living there currently.

24    So it is not that Mr. Schmidt could live there.  Mr. Schmidt --

25        THE COURT:  What were the circumstances of his arrest?

1    MR. SINGER:  Pardon me, Your Honor?

2    THE COURT:  What were the circumstances of his arrest?

3    MR. SINGER:  Mr. Schmidt was arrested at the airport

4    on his way out of the country back to Germany.  Mr. Schmidt, we

5    understand, is here.

6    And in fairness to his counsel, his counsel alerted us

7    the day before he arrived that Mr. Schmidt was going to be here

8    on vacation for a few weeks and so Mr. Schmidt was returning

9    back to Germany.  Germany is where Mr. Schmidt works.  That's

10   where he lives and that's where his family is.

11   THE COURT:  I'm sorry.  You are saying that counsel

12   alerted the Government that Mr. Schmidt was here in Florida?

13   MR. SINGER:  Counsel -- Mr. Schmidt had been

14   interviewed previously as part of the case.

15   THE COURT:  All right.

16   MR. SINGER:  Mr. Schmidt's counsel informed me a day

17   before his arrival into the United States that he would be

18   coming and asked, frankly, if he had anything to worry about.

19   The Government essentially said we were not offering safe

20   passage to Mr. Schmidt.

21   Mr. Schmidt, at that time, did not know that he was

22   likely to be arrested or a target of the investigation.  So I

23   am confident that if he knew that he would not have come here.

24   THE COURT:  Well, I am not going to make any findings

25   in that regard.  I will leave that on the record at this time.

15

1    I am sure there are explanations as to what is going on here.

2    Okay.  But the Government's position is -- okay.  It is what it

3    is.

4              MR. SINGER:  Yes, Your Honor.  We believe he is a risk

5    of flight.

6              THE COURT:  It is not as clearcut as what I initially

7    thought.

8              Okay.  All right.  Counsel?

9              MR. MASSEY:  Your Honor, I may turn to Mr. Couriel on

10   certain points.  There are a number of things here, Your Honor.

11             Mr. Schmidt has close ties to the United States.  He

12   worked here for 18 months in 2005 to 2006.  He worked here for

13   three years from 2012 to 2015.

14             He lived here with his wife for many years.  He speaks

15   perfect English.  He owns this property in Miami.  He owns

16   seven properties in the Miami and Fort Lauderdale area worth

17   approximately $500,000 in equity, all of which could be posted

18   with the Court.

19             THE COURT:  In total?

20             MR. MASSEY:  In total.

21             There is additional property owned by friends, close

22   friends of many, many years from Germany who they spend the

23   holidays with every year, who are here in court who are willing

24   and able to post property valued at approximately $140,000 in

25   equity in addition to that.  There is another --

16

```
 1           THE COURT:  If you are here in support of Mr. Schmidt,
 2  just raise your hands so I could put it on the record.  Okay.
 3  I am see that.  I am putting this on the record so you could
 4  have it.
 5           MR. MASSEY:  Thank you, Your Honor.
 6            It's his wife and two close friends of many, many
 7  years.
 8           THE COURT:  Thank you for coming in.  It is very
 9  helpful to the Court and to Mr. Schmidt.
10           MR. MASSEY:  There is an additional approximately
11  $150,000 in equity that Mr. Schmidt can pull together.  And
12  then, $350,000 approximately in cash for a total of more
13  than --
14           THE COURT:  Of what?
15           MR. MASSEY:  An additional $350,000.
16           THE COURT:  In cash?
17           MR. MASSEY:  I believe so.
18           MR. COURIEL:  In bank accounts.
19           MR. MASSEY:  In bank accounts.
20           THE COURT:  Okay.
21           THE DEFENDANT:  In German bank accounts.
22           MR. MASSEY:  In German bank accounts.
23           THE COURT:  In German bank accounts?
24           MR. MASSEY:  Yes.  For a total of more than one
25  million dollars, which compared that's more than I understand
```

1   Mr. Schmidt's net worth to be.  It's a very substantial amount

2   of money for him and as a percentage of his, it is greater than

3   his net worth.

4          Your Honor, I am sure is aware, that there are many

5   examples of defendants in cases from countries like

6   Switzerland, France, and Germany, which all do not extradite

7   their own citizens.

8          THE COURT:  Which do what?

9          MR. MASSEY:  Which all don't extradite their own

10  citizens who are permitted to remain out on bail pending trial,

11  particularly in complex cases that involve a lot of discovery.

12         Here we've asked for discovery and I got a thumb drive

13  with 11,000 pages of the initial important discovery.  We

14  expect there to be many millions, if not tens of millions of

15  pages of discovery ultimately, which we need access to Mr.

16  Schmidt to be able to review with him.  Of course, not only in

17  the short term, but in the longer term.  If he is detained we

18  won't have that kind of access which we need.

19         I should, Your Honor, ask about his circumstances of

20  his arrest and Mr. Singer alluded to his prior interview.  His

21  prior interview was an extraordinary situation in which early

22  on, very early in this situation, Mr. Schmidt heard that there

23  was an investigation.

24         Mr. Schmidt affirmatively reached out on his own

25  without counsel, without counsel of the company or his own

18

1   counsel, to speak to FBI agents.  He flew to London and spoke

2   to FBI agents at great length.

3           THE COURT:  Did you say flew in?  I am missing --

4           MR. MASSEY:  Flew to London.

5           THE COURT:  From here?

6           MR. MASSEY:  From Germany.

7           THE COURT:  Okay.

8           MR. MASSEY:  And met them.

9           THE COURT:  In London?

10          MR. MASSEY:  In London.  And spoke to them at great

11  length and then we answered their questions.

12          And then, in November of this year, I spoke to trial

13  attorney Singer, who confirmed that he was merely a subject as

14  of November of 2016.

15          THE COURT:  Okay.

16          MR. MASSEY:  And he has confirmed that he was a

17  subject as of mid-December of 2016.

18          I have no idea --

19          THE COURT:  A subject as opposed to what?

20          MR. MASSEY:  A target.

21          THE COURT:  Okay.

22          MR. MASSEY:  Or someone who was indicted.  He was

23  still a subject.

24          And something happened -- I have yet to learn what --

25  between December 16th and December 30th that caused him to move

19

1   straight through the target category and to be arrested.

2          But, based on the substantial nature of his ties, the

3   need for access to him when he is pending trial in what is an

4   extremely complicated case with all kinds of defenses,

5   including certain advice of counsel defenses.

6          And his clear willingness to submit himself to the

7   jurisdiction of the United States by coming here and not

8   crossing the border once or twice, but four times.  He showed

9   that he has absolutely nothing to hide from the Government.  He

10  was willing and is still willing to speak to the Government.

11         I told Mr. Singer that he was willing to speak to the

12  Government on November 7th.  And we see absolutely no reason

13  why he should not be permitted something very narrow, which

14  we're asking for, which is to be essentially in a hotel under

15  more or less a house arrest kind of situation, supervised by

16  the Marshals.  And then, permitted to fly to Detroit with an

17  agent to have a fuller hearing at that time.

18         An example, which Mr. Couriel can address, that it

19  happened in this district where Raul Wile (phonetic) was

20  permitted, who is a Swiss national, was permitted to stay out

21  on bail and did so for many, many months and was ultimately

22  acquitted.  And I would ask Mr. Couriel to address that.

23         MR. COURIEL:  Sure.

24         THE COURT:  I didn't set that bond, right?

25         MR. COURIEL:  That is correct.  It was before Judge

20

1  Marra, Your Honor.

2         THE COURT:  Who?

3         MR. COURIEL:  Judge Marra in Palm Beach.

4         THE COURT:  Oh, he's a very good Judge.

5         MR. COURIEL:  In that case, there were a significant,

6  I would say, comparable fraud loss numbers under the

7  guidelines.

8         THE COURT:  May I just ask you a question?

9         If it got to Judge Marra, who is District Court,

10  another situation must have occurred prior to it reaching Judge

11  Marra.

12         MR. COURIEL:  I don't know that that's true, Your

13  Honor.  I don't remember who the magistrate was who set that

14  bond.

15         In this case, Your Honor, I think the proposal that

16  Mr. Massey has articulated is that subject to all the parties

17  ability to have a full bond hearing in Michigan, perhaps the

18  Court could give Mr. Schmidt a bond.

19         The conditions of which would be that he post

20  substantial assets as surety, that he be under electronic

21  monitoring, that he travel in the very near term to the Eastern

22  District of Michigan, to which he is waiving removal and not

23  contesting identity.

24         And travel in the company of Government agents if

25  that's what the Government would like.  Reside, perhaps, at the

21

1    home of family, trusted family or friends, or at a hotel at the

2    Government's option.

3          And basically, save the Government a situation where a

4    man, who I think has demonstrated a willingness to travel to

5    the Government, is not being incarcerated during a time which

6    counsel could have very profitable access to him in terms of

7    preparing his defense.  So that, I believe, is the proposal

8    that Mr. Massey articulated.

9          MR. SINGER:  Your Honor, may I address a couple of

10   points?

11         THE COURT:  All right.

12         MR. SINGER:  First of all, with respect to the

13   property listed, that is news to the Government.

14         We have done extensive property searches in the time

15   frame that was allotted to us.  We were available to find one

16   property.

17         THE COURT:  You know, I paid 4500 bucks for these

18   hearing aids and I am missing like every eighth word.

19         MR. SINGER:  I'm sorry, Your Honor.  Is that better?

20         THE COURT:  Yes.

21         MR. SINGER:  So the Government is not aware of the

22   properties.

23         In fact, Mr. Schmidt's wife, who was traveling with

24   him, was asked yesterday in an interview by law enforcement

25   whether they had any property in Florida and she said no.

22

```
 1          THE COURT:  Well, maybe she does not know about it.
 2          MR. SINGER:  That may be well, Your Honor.
 3          I think the point simply is that if the Court is going
 4  to rely on that we would want additional time to --
 5          THE COURT:  I am not going to rely upon it.
 6          MR. SINGER:  Second of all, Your Honor --
 7          THE COURT:  I will consider it, but I won't rely upon
 8  it.
 9          MR. SINGER:  Second of all, Your Honor, with respect
10  to Mr. Schmidt's willingness to meet with the Government, Mr.
11  Schmidt did meet with the Government.  And then, in the
12  Government's estimation, lied.  He said he was not guilty of
13  any of the offenses.  He did not know about it.
14          There's lots of proof, including documentary proof
15  that we can offer Your Honor that shows that the time that he
16  was involved in discussions with regulators, Mr. Schmidt
17  clearly knew that they were lying to the regulators.  Mr.
18  Schmidt told us in his interview that he had no idea.
19          So I think the idea of Mr. Schmidt coming in and
20  speaking to the Government under those circumstances is hardly
21  extraordinary.  It is actually, I think, a fact that weighs
22  against him and against his own credibility and your ability to
23  trust that he will follow through on his word in terms of
24  coming to the Eastern District of Michigan.
25          Your Honor, while Mr. Schmidt may pledge a certain
```

1   amount of money, the simple fact is that Mr. Schmidt has every

2   reason in the world to go back to Germany under these

3   circumstances and if he goes back, he's never coming back.

4   That's it.  And there is really nothing about what Mr. Massey

5   said that changes that equation.

6             THE COURT:  Thank you, Counsel.

7             Here is what we will do.  There is no secret, Mr.

8   Schmidt, you have the best lawyers that you could possibly get

9   who are very persuasive and compelling and made an excellent

10  record in this case.

11            The Government, I am pleased to say as a taxpayer, is

12  very well represented in this case.

13            Okay.  Here is what I am going to do.  I am going to

14  set this matter for a detention hearing and a removal hearing

15  on Thursday.  I am going to put it on my 2:00 calendar.

16            So if you need the morning time to dot the Is and

17  cross the Ts, but I will put it for 2:00 on Thursday.  He will

18  be temporarily detained pending that hearing.  And then, at

19  2:00 we will have, if it comes to that, another detention

20  hearing and the removal hearing.

21            Now, what is my intention here?  My intention is to be

22  fair to the Government and to be fair to the Defendant and his

23  family.  I am, basically, giving you 48 to 72 hours to see if

24  you could work something out.  There are a lot of options here.

25            For example, one being, he could waive removal and go

24

1  directly back to the Eastern District of Michigan, you know,

2  but right now he would be under detention.

3       Another factor is, you know, the U.S. Marshal's bus

4  service here, he may not show up -- and I am not criticizing

5  the Marshals, of course.  It is just a funding, whatever, but

6  it may take three weeks for him to end up in Detroit if it is

7  done under the Marshal's transportation.

8       Do you follow me?

9       But I do not want him treated specially, you know, but

10 one option may be, if the Government agrees, if he's got the

11 funds -- I am just throwing this out.

12      Do you follow me?

13      To pay the cost of a couple of Marshals accompanying

14 him to Detroit that may -- I am just throwing this out.  I am

15 not making any findings, or whatever, but I have great lawyers

16 here.  I have the Department of Justice lawyer here.

17      What you want to do is you want to get him back to

18 Detroit so this matter can be addressed on the merits, correct?

19      MR. MASSEY:  Yes, Your Honor.

20      THE COURT:  I will help you with that, but you have to

21 put it before the Court.  You have to work something out if you

22 can.

23      Okay.  And so I am giving you the 48 hours to 72 hours

24 to see and consult with the Detroit office.  Consult here and

25 consult with your client and with his family to see if there is

1  some agreement that you can come up with to present to the

2  Court.

3         Do you follow me?

4         I am not saying that I will approve anything, but I am

5  saying that I will listen to what you have to say because the

6  goal is making sure that he appears in the Eastern District of

7  Michigan so this matter can be addressed on the merits.

8         But, on this record, he is a citizen of Germany.

9  There is no extradition treaty.  It is a very serious charge in

10  this case.  Under the Bail Reform Act there is, really, I am

11  almost required to detain him at this point, but there are a

12  number of things that you can do.

13        And if you cannot reach any agreement, or do anything,

14  then, we will address the removal on Thursday and the issue of

15  detention and give you a chance to prepare.  So I am giving you

16  all your options, you know, and maintaining the status quo and

17  giving you quick action, you know.  Today is Monday.  I am

18  bringing you in Thursday.

19        Government, I know you wanted more time, but that is

20  72 hours.

21        MR. SINGER:  Thank you, Your Honor.  That will be

22  fine.  Thank you.

23        THE COURT:  And Counsel, you are the best in the

24  business.  If I ever got in trouble and could afford you guys,

25  you would be on my quick dial.

1          But, certainly, this is something to see if you can
2   work out something, but I cannot let him out, unless there are
3   a couple of Marshals with him full-time in this record.
4          MR. MASSEY:  Thank you, Your Honor.
5          THE COURT:  You may not have asked for it on the
6   record.  I am just giving you my thoughts.
7          MR. MASSEY:  Thank you very much, Your Honor.
8          May I address a couple of housekeeping --
9          THE COURT:  Anything you want.
10          MR. MASSEY:  -- issues?
11          One, is that you see glasses on Mr. Schmidt's face.
12   He was not allowed -- he needs them for reading.  Among other
13   things he needs to read the complaint against him.  He was not
14   allowed to have them.
15          THE COURT:  Let me ask the Marshals.  I never tell the
16   Marshals what to do.  Do you follow me?
17          In 30 years they are always very fair, or whatever,
18   but that is something new.
19          He is not allowed to have glasses?
20          THE U.S. MARSHAL:  (Inaudible.)
21          THE COURT:  And they look and make sure there is no
22   gun in it or anything, right?
23          THE U.S. MARSHAL:  Yes.
24          THE COURT:  How is that, Counsel?
25          MR. MASSEY:  That's fine, Your Honor.

```
 1          THE COURT:  It is German technology.  We have to check
 2  out these glasses.  They may be --
 3          MR. MASSEY:  The other thing is --
 4          THE COURT:  -- just for eyesight.
 5          MR. MASSEY:  This may be outside Your Honor's control
 6  as well, but we would like to have -- if the Marshals will
 7  allow, if we could have the opportunity to meet with Mr.
 8  Schmidt now, or in a room, or over here, or some place where
 9  back here, or we could just have a few minutes to talk to him
10  before he is sent --
11          THE COURT:  Yes, we could do that.  What would your
12  preference be?  Like in court?  I would allow that.
13          THE U.S. MARSHAL:  (Inaudible.)
14          THE COURT:  Would you be able to do that?  Okay.
15  There you are.
16          MR. MASSEY:  That would be perfect, Your Honor.  Thank
17  you so much.
18          THE COURT:  And I will see you on Thursday at 2:00.
19          Okay.  Now, if you work something out and you need a
20  court order before then -- you know what I am saying?  Like in
21  the nightclub act, I am here the whole week.
22          Do you follow me?
23          MR. MASSEY:  Yes.
24          THE COURT:  So if you need a court order, or
25  something, just call Alexander and he will put you right on the
```

28

 1  calendar for 10:00 or 2:00.

 2           MR. MASSEY:  Thank you so much, Your Honor.

 3           THE COURT:  Nice to see you.  Make sure Mr. Couriel

 4  buys you dinner.

 5           May I see you on an unrelated -- you may be able to

 6  confer with your client, sir.  I need to see Mr. Couriel on an

 7  unrelated matter.

 8           Okay.  We are off the record.

 9           (Thereupon, the proceedings concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

29

1

2                           CERTIFICATE

3

4          I hereby certify that the foregoing transcript is an

5     accurate transcript of the audio recorded proceedings in the

6     above-entitled matter.

7

8

9

10
      01/10/17                      Bonnie Joy Lewis,
11                        Registered Professional Reporter
                             CASE LAW REPORTING, INC.
12                          7001 Southwest 13 Street,
                          Pembroke Pines, Florida 33023
13                              954-985-8875

14

15

16

17

18

19

20

21

22

23

24

25