# EXHIBIT CC

— Ausfertigung —



**Amtsgericht Braunschweig**
- Abteilung für Strafsachen -
3 Gs 95-96/17

20.01.2017

# Beschluss

In dem Ermittlungsverfahren gegen

**Oliver Schmidt**
geb. 09.01.1969 in Stadthagen
wohnhaft: Kornblumenring 29, 38524 Sassenburg

**u. a.**

wegen Betruges, strafbarer Werbung und mittelbarer Falschbeurkundung

wird die Durchsuchung

der Wohnung und Nebenräume sowie des sonstigen umfriedeten Besitztums des Beschuldigten Oliver Schmidt

Kornblumenring 29, 38524 Sassenburg

und seines Arbeitsplatzes bei der Volkswagen AG Berliner Ring 2, 38440 Wolfsburg

sowie seiner Sachen und seiner Person (einschließlich seiner Kraftfahrzeuge und Datenverarbeitungsanlagen nebst Datenträgern)

angeordnet,

weil aufgrund von Tatsachen zu vermuten ist, dass die Durchsuchung zur Auffindung von Beweismitteln, nämlich

- Laptops, Handys, E-Mails und sonstige Speichermedien, die das Projekt Dieselmotor Typ EA 189 und installierter Abschaltsoftware betreffen
- Unterlagen, Aufzeichnungen, Speichermedien, die die Thematik betreffen und Aufschluss über Besprechungsinhalte sowie Informationswege zu Fragen der Installation und Programmierung der Abschaltsoftware geben.
- Unterlagen und sonstige Korrespondenz, die sich mit Fragen der Abschaltsoftware befassen.
- Interne Vermerke und Vorlagen an Mitarbeiter sowie vorgesetzte Stellen des Volkswagen Konzerns über die Abgasproblematik/Funktionsweise der Software
- alle zuvor genannten Unterlagen auch in Dateiform.

führen wird, §§ 102, 105 Strafprozessordnung (StPO)

### Gründe:

Die Staatsanwaltschaft Braunschweig – Zentralstelle für Wirtschaftsstrafsachen – führt ein Ermittlungsverfahren gegen den Beschuldigten und weitere Mitarbeiter der Firma Volkswagen AG im Zusammenhang mit Abgasmanipulationen bei den Dieselmotoren Typ EA 189 in Europa und den USA, bei denen Erkenntnisse vorliegen, dass die jeweils geltenden Abgasnormen durch die vorsätzliche Verwendung unzulässiger Abschalteinrichtungen (sog. defeat device) unterlaufen werden.

Nach der Strafanzeige der Volkswagen AG vom 24.09.2015 wurde ab 2005 im Zusammenhang mit der Einführung der Common Rail Technologie zur Versorgung der Dieselmotoren mit Kraftstoffgemisch, eine von der Firma Bosch unter Beteiligung der IAV GmbH Ingenieurgesellschaft Auto und Verkehr entwickelte Steuerungssoftware für Dieselmotoren erstellt. Die Software steuert anhand von Kennfeldern Parameter im Motor in unterschiedlichen Betriebszuständen. Diese Software wurde im Fachbereich **EA Aggregate Entwicklung der Volkswagen AG** weiter entwickelt. Für die Programmierung der Parameter in den Kennfeldern ist die Abteilung **EAD Dieselmotor Entwicklung der Volkswagen AG** zuständig. Die Common Rail Technologie kam im Jahr 2007 in den Serieneinsatz. Bei Fahrzeugen mit der eingebauten Steuerungssoftware sind beträchtliche Abweichungen bei den Stickoxidemissionen zwischen Prüfstandswerten und dem realen Fahrbetrieb festgestellt worden. Diese Unterschiede beruhen nach den Ermittlungserkenntnissen auf einer verbotenen unterschiedlichen Programmierung der Wirksamkeit von Emissionsminderungssystemen in den jeweiligen Betriebsmodi der betroffenen Motoren. Zur Umschreibung dieser Wirkungsweise der Software wurde von den im Volkswagenkonzern verantwortlich handelnden Personen der Begriff „Akustikfunktion- bzw. Akustikmode" verwendet.

Die Grenzwerte hinsichtlich des Ausstoßes der Stickoxide (NOx) sind in den USA ausweislich entsprechender Testergebnisse um ein Vielfaches überschritten worden und liegen auch weit über den in der Europäischen Union geltenden Schadstoffklassen Euro 4 – 6. Die Manipulation hat die Volkswagen AG öffentlich und gegenüber dem Kraftfahrt-Bundesamt eingeräumt. Das Kraftfahrtbundesamt hat die Stilllegung der betroffenen Fahrzeuge angedroht, soweit die Volkswagen AG nicht in der Lage ist, die Fahrzeuge durch Nachbesserungen in einen zulassungsfähigen Zustand zu versetzen.

Der Beschuldigte Oliver Schmidt hat in der Zeit von 2012 bis März 2015 das Environmental and Engineering Office („EEO") der VWGoA - die Aggregate-Zulassung für den Volkswagenkonzern in den USA - geleitet.

Nach dem Stand der derzeitigen Ermittlungen besteht der Verdacht, dass der Beschuldigte Oliver Schmidt spätestens Ende März 2014 Kenntnis von den durch die West Virginia University unter Mitwirkung von CARB und dem ICCT in den USA bei VW-Fahrzeugen festgestellten NOx-Grenzwertüberschreitungen (sog. ICCT-Studie) erlangt hat und er seither bösgläubig in Bezug auf die eingesetzte Testerkennung in der Motorsteuergeräte-Software als Ursache der sehr hohen Abweichung zwischen Rollen- und Straßenwerten war.

Ausweislich einer E-Mail vom 31.03.2014 übermittelte ihm der Audi-Mitarbeiter Carsten Nagel unter Hinweis auf die Brisanz Screenshots aus der ICCT-Präsentation. Im Zusammenhang mit einer Präsentation zum „SFTP-Compliance Einführungsszenario NAR Konzern" teilte der Zeuge Schmidt sodann per E-Mail vom 02.04.2014 seinem Kollegen Marcel Zirwes bei der VWGoA u. a. mit

„Es soll erst mal entschieden werden ob wir ehrlich werden. Werden wir nicht ehrlich, bleibt alles wie es ist. Dummerweise hat ICCT gerade Messungen von NAR Dieseln Off Cycle veröffentlicht, nicht schön."

Per E-Mail des ICCT vom 08.04.2014 wurden der VWGoA (EEO) Folien aus der kommenden ICCT-Studie übermittelt, aus denen sich u. a. die auffällig hohen Abweichungen bei den Off-Cycle-Emissionen um einen Faktor von bis zu 35 ergeben. Zugleich wurde der VWGoA mitgeteilt, dass die auffälligen Fahrzeuge von Volkswagen stammen und eine Kommentierung erbeten. Die E-Mail wurde angesichts ihrer herausgehobenen Bedeutung mehrfach weitergeleitet u. a. am 15.04.2014 von dem Beschuldigten Schmidt an den Beschuldigten Gottweis mit dem Hinweis

„Studie ist innerhalb VWGoA nur bei EEO zur Zeit bekannt, was auch erst mal so bleiben soll."

und an seinen Kollegen Marcel Zirwes mit dem Bemerken

„Nur draufgucken, wenn keiner guckt.".

Aufgrund dieser Vorwürfe ist der Beschuldigte Schmidt durch die mit den Ermittlungen befassten Mitarbeiter des US-amerikanischen Justizministeriums und des FBI zu Beginn dieses Jahres in Untersuchungshaft genommen worden. Ein Verbot der Doppelverfolgung besteht im Verhältnis zu den Vereinigten Staaten von Amerika nicht.

Der Beschuldigte Schmidt steht mit den weiteren Beschuldigten in dem Verdacht, es pflichtwidrig unterlassen zu haben, den bekannt gewordenen rechtswidrigen Zustand zu beenden und im Gegenteil die US-amerikanischen Behörden EPA und CARB durch die unzutreffende Behauptung anderweitiger Ursachen für die Grenzwertüberschreitung von einem Einschreiten abgehalten zu haben. Der Verkauf der mit der unzulässigen Motorsteuerungssoftware versehenen Fahrzeuge in den USA nebst Werbemaßnahmen wurde erst nach dem öffentlichen Eingeständnis der von den US-Behörden festgestellten Verstöße am 20.09.2015 eingestellt.

In Amerika sind Autokäufer durch Vorspiegelung falscher Emissionswerte und einer sauberen Dieseltechnologie dazu bewogen worden, sich für den Kauf eines gegenüber anderen Dieselfahrzeugen deutlich teureren Fahrzeuges zu entscheiden, wobei diese - ohne entsprechende Nachrüstungsmaßnahmen durch die Volkswagen AG – nicht die zulassungsfähigen Emissionswerte einhalten. Zugleich droht bei einer noch unbekannten Vielzahl von Fahrzeugen der Wegfall der Zulassung und die Stilllegung.

Es besteht somit der Verdacht des Betruges gem. § 263 Abs. 1 und Abs. 3 StGB, der strafbaren Werbung gem. § 16 Abs. 1 UWG, jeweils i. V. m. §§ 13, 25 Abs. 1 2. HS StGB.

Die Durchsuchung ist im Hinblick auf den Grad des Tatverdachts und die zu erwartenden Ermittlungsergebnisse verhältnismäßig, mildere Maßnahmen von gleich geeigneter Wirkung sind zur Aufklärung des Sachverhalts nicht gegeben. Die bisherigen Ermittlungen haben gezeigt, dass der vollständige Sachverhalt nicht ohne eine umfassende Auswertung belastbarer Dokumente rekonstruiert werden kann. Im Rahmen von Vernehmungen hat der Vorhalt diverser Dokumente zu nachvollziehbareren Bekundungen und Angaben von Zeugen und Beschuldigten geführt. Daneben konnte festgestellt werden, dass eine Vielzahl von Dokumenten - auch in elektronischer Form- von Beteiligten des Volkswagenkonzerns in den Privatwohnungen aufbewahrt worden sind. Trotz des zwischenzeitlich eingetretenen Zeitablaufs konnten so für das vorliegende Verfahren erhebliche weiterführende Dokumente bei mehreren Beschuldigten und Zeugen beschlagnahmt werden. Unter Berücksichtigung dieser Erkenntnisse liegen erhebliche Anhaltspunkte dafür vor, dass die oben bezeichneten Unterlagen sich auch im Privathaus des Beschuldigten Schmidt sowie an dessen Arbeitsplatz auffinden lassen werden. Angesichts der Bedeutung der für die vollständige Aufklärung des Sachverhalts zu erwartenden Beweismittel ist die Durchsuchungsanordnung angemessen.

Der Tatverdacht beruht auf den Angaben in der Strafanzeige der Volkswagen AG, der ergänzenden Berichte der Volkswagen Konzernrevision, veröffentlichter Studien, der ausgewerteten Unterlagen und Daten sowie der durchgeführten Vernehmungen. Seitens der Volkswagen AG ist die Manipulation eingeräumt worden.

Eine vorherige Anhörung des Beschuldigten unterbleibt, da sie den Ermittlungszweck gefährden würde, § 33 Abs. 4 S. 1 StPO.

Langkopf
Ermittlungsrichter

Ausgefertigt
Amtsgericht Braunschweig, 23.01.2017

Wichert, Justizobersekretärin
als Urkundsbeamtin der Geschäftsstelle

- Copy -

**Braunschweig District Court**                                                                  1/20/2017
**- Criminal division**
**3 Gs 95-96/17**

**Decision**

In the preliminary proceedings against

**Oliver Schmidt**
Born 1/9/1969 in Stadthagen
Resident: Kornblumenring 29, 38524 Sassenburg

**and others**

for fraud, deceptive advertising and indirect false certification

The search is authorized

>   of the apartment and adjoining rooms as well as other enclosed property of the suspect Oliver Schmidt
>
>   Kornblumenring 29, 38524 Sassenburg
>
>   and his workplace at Volkswagen AG Berliner Ring 2, 38440 Wolfsburg
>
>   as well as his effects and his person (including his motor vehicle and data processing equipment and data storage devices),

because, on the basis of facts, it is assumed that the search will lead to the discovery of evidence, namely

- Laptops, mobile phones, emails and other storage media that relate to the project Diesel engine Type EA 189 and installed defeat device software is found.
- Documents, drawings, storage media related to this subject and that provide information about meeting contents and information about the installation and programming of the defeat device software.
- Documents and any correspondence that have to do with the question of the defeat device software.
- Internal notes and templates to employees and supervisors of the Volkswagen Group regarding the exhaust problem/functionality of the software.
- All previously mentioned documents, also in computer form.

Following §§ 102, 105 Criminal Procedure Code (StPO)

**Grounds**

The prosecutor's office in Braunschweig – the central location for economic offences – is undertaking a preliminary proceeding against the suspect and other employees of the company Volkswagen AG in connection with exhaust gas manipulation for the diesel engine type EA 189 in Europe and the USA, where there are findings that the applicable exhaust gas standards were undermined by the intentional use of impermissible shut off devices (so-called defeat devices).

According to the complaint against Volkswagen AG of 9/24/2015, starting in 2005, in connection with the introduction of Common Rail Technology for supply of diesel engines with fuel mixtures, control software for diesel engines was developed by the company Bosch with the participation of IAV GmbH Ingenieurgesellschaft Auto und Verkehr (Engineering Company Auto and Traffic). The software controls parameters in the engine in different operating conditions by means of characteristic patterns. This software was further developed In the department **EA Unit Development of Volkswagen AG**. The division **EAD Diesel engine Development of Volkswagen AG** is responsible for the programming of parameters for characteristic patterns. Common Rail Technology became a standard component in 2007. For vehicles with the built in control software there was a significant reduction of nitrogen oxide emissions between test values and real operating conditions. Based on the results of the investigation, these differences are the result of a forbidden different programming of the effectiveness of emission control systems in the respective operating modes of the engines in question. Within the Volkswagen Group the responsible personnel used the concept "acoustic function or acoustic mode" to describe this functionality of the software.

According to relevant test results the limit values for nitrogen oxides (NOx) were exceeded many times over in the USA and are also well above the applicable pollution classes Euro 4-6 in the European Union. Volkswagen AG has publicly admitted the manipulation to the Federal Motor Vehicle Office. The Motor Vehicle Office has threatened to revoke the licenses for the motor vehicles involved if Volkswagen is unable to put the motor vehicle in an approvable condition through subsequent improvements.

The suspect, Oliver Schmidt, headed the Environmental and Engineering Office ("EEO") of the VWGoA – which handled unit approval for the Volkswagen Group in the USA - during the period from 2012 to March 2015.

According to the status of the current investigations the suspect, Oliver Schmidt, is believed to have gained knowledge, by no later than the end of March 2014, of the exceedance of the NOx limit values in VW vehicles, as determined by West Virginia University, with the participation of CARB and the ICCT in the USA (the so-called ICCT study), and he has since then been in bad faith with regard to the test recognition used in the engine control device software as a cause of the very large discrepancy between test bench and road values.

As evidenced by an email dated 3/31/2014, the Audi employee Carsten Nagel sent him screenshots from the ICCT presentation while referring to their explosive nature. In connection with a presentation on "SFTP Compliance Introduction Scenario NAR Corporation," the witness Schmidt then wrote the following to his colleague Marcel Zirwes at VWGoA in an email dated 4/2/2014:

"First it should be decided if we will be honest. If we are not honest, everything will remain as it is. Unfortunately, ICCT has just published NAR Diesel Off Cycle test results, which is not good."

The VWGoA (EEO) slides from the upcoming ICCT study were sent in an email from ICCT dated 4/8/2014. The slides indicate that there were noticeably high variances in the off cycle emissions by a factor of up to 35. At the same time VWGoA was informed that the vehicles in question were from Volkswagen and a comment was requested. Because of its obvious importance, the email was forwarded several times, including on 4/15/2014 by the suspect Schmidt to the suspect Gottweis with the note

"Within VWGoA, study is only known by EEO, and it should stay like this for the time being."

and to his colleague Marcel Zirwes with the remark

"Only look at it when no one is looking".

On the basis of these allegations, at the beginning of this year the suspect Schmidt was taken into custody by employees of the US Justice Department and the FBI involved in the investigation. There is no prohibition on double indemnity with respect to the United States of America.

The suspect Schmidt and further suspects are suspected of having failed, in breach of obligation, to terminate the illegal condition that had become known and, on the contrary, of having deterred the US authorities, the EPA and CARB, from intervening by making the inaccurate claim that there were other reasons for the limit values being exceeded. The sale of vehicles equipped with the inadmissible engine control software in the USA, along with advertising, was only terminated after the public admission about the infringements detected by the US authorities on 9/20/2015.

In America, automobile purchasers were induced to decide on the purchase of a vehicle that was significantly more expensive than other diesel vehicles, on the pretense of false emission values and a clean diesel technology, though these vehicles – without retrofitting by Volkswagen AG – cannot meet the allowable emission values. At the same time, in a yet undetermined large number of vehicles, there is a risk of a revocation of registration and a shutdown.

There is thus the suspicion of fraud according to § 263 Section 1 and Section 3 StGB, the criminally deceptive advertising according to § 16 Section 1, UWG, in each case in connection with §§ 13, 25 Section 12, HS StGB.

The search is proportionate in light of the degree of suspicion and the expected results of the investigation, and there are no milder measures of equal effect available to clarify the circumstances. The investigation thus far has shown that the full facts cannot be reconstructed without a comprehensive assessment of the relevant documents. In the context of interrogations, the provision of various documents has led to more comprehensible evidence and statements by witnesses and the accused. In addition, it was established that many documents - also in electronic form – were kept in private homes by involved individuals from the Volkswagen Group. Despite the passage of time, it was thus possible to confiscate a significant number of additional documents for the present proceedings in the cases of several accused and witnesses. Taking this into account, there is considerable evidence that the documents referred to above are to be found in the private home of the accused Schmidt as well as his workplace. In view of the importance of the expected evidence to elucidate the facts, the search order is justified.

This suspicion is based on the information given in the criminal complaint against Volkswagen AG, in the supplementary reports by the Volkswagen Group auditors, published studies, the evaluated documents and data as well as interviews conducted since Volkswagen AG admitted to the manipulation.

A previous hearing of the accused will be omitted since it would jeopardize the purpose of the investigation, § 33 Section 4, P. 1 StPO.

Langkopf
Investigating Judge

Prepared
In the Braunschweig District Court, 1/23/2017

[signature]
Wichert, Senior Clerk of the Court
As Registrar of the Court

[seal:] Braunschweig District Court



**United Language Group**
1600 Utica Avenue South
Minneapolis, MN 55416
+1 888.601.9814
legaltranslations@ulgroup.com

State of New York       )
                        )   ss:
County of Kings         )

### Certificate of Accuracy

This is to certify that the attached:

**1-20-17 Braunschweig District Court Decision**

originally written in the German language is, to the best of our knowledge and belief, a true, accurate and complete translation into the English language.

Dated: February 16, 2017

_____
Selin Cayirli
Project Manager, Legal Translations
United Language Group

Sworn to and signed before me, this ___16th___ day of ___February___ 2017

_____
Notary Public

ROBERT J. MAZZA
Notary Public, State of New York
No. 01MA5057911
Qualified in Kings County
Commission Expires April 1, 2018