# EXHIBIT  SS

Case 2:16-cr-20394-SFC-APP  ECF No. 51-11, PageID.1223  Filed 02/24/17  Page 2 of 49
Case 0:08-cr-60322-JIC  Document 24  Entered on FLSD Docket 12/20/2013  Page 1 of 48

1

```
1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
2                          MIAMI DIVISION

3                Case No. 08-CR-60322-COHN/HUNT

4     THE UNITED STATES OF AMERICA,

5
              Plaintiff,
6                                      FORT LAUDEDALE, FLORIDA
      vs                               DECEMBER 16, 2013
7

8     RAOUL WEIL,

9              Defendant.

10    _____

11        TRANSCRIPT OF INITIAL APPEARANCE & BOND HEARING
             BEFORE THE HONORABLE PATRICK M. HUNT,
12             UNITED STATES DISTRICT COURT JUDGE

13    APPEARANCES:

14
      FOR THE GOVERNMENT:
15
                          UNITED STATES DEPARTMENT OF JUSTICE
16                        TAX DIVISON
                          801 D Street, N.W.
17                        Room 7334
                          Washington, D.C. 20579
18                        BY: MARK F. DALY

19

20                        UNITED STATES ATTORNEY'S OFFICE
                          500 E. Broward Boulevard
21                        Fort Lauderdale, florida  33412
                          BY: RICHARD MURAD,  A.U.S.A.

22

23

24
      REPORTED BY:        JERALD M. MEYERS, RPR.
25    TELEPHONE:          954-431-4757
```

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1224   Filed 02/24/17   Page 3 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 2 of 48

2

```
 1
 2
 3   FOR THE DEFENDANT:
 4
 5
                            FRESHFIELDS BRUCKHAUS DERINGER,
 6                          LLP
                            601 Lexingon Avenue
 7                          Floor 31
                            New York, NY 10022
 8                          BY: AARON R. MARCU, ESQ.
                            BY: KIMBERLY ZELNICK, ESQ.
 9
10
11
12
13                         MANDEL & MANDEL, LLP
                           Alfred I. DuPont Building
14                         169 E. Flagler Street
                           Suite 1200
15                         Miami, Florida  33131
                           BY: DAVID S. MANDEL, ESQ.
16
17
18
19
20
21   REPORTED BY:          JERALD M. MEYERS, RPR.
                           J.M. COURT REPORTING, INC.
22                         1601 N.W. 109th Terrace
                           Pembroke Pines, Florida
23                         Telephone: 954-431-4757
                           E-mail Address: CRJM@AOL.COM
24
25
```

Case 2:16-cr-20394-SFC-APP  ECF No. 51-11, PageID.1225  Filed 02/24/17  Page 4 of 49
Case 0:08-cr-60322-JIC  Document 24  Entered on FLSD Docket 12/20/2013  Page 3 of 48

3

```
 1   (Call to order of the Court)

 2              THE COURT:  All right.

 3              THE CLERK:  U.S.A. versus Raoul Weil, case number

 4   08-60322-Criminal-Cohn.

 5              THE COURT:  Okay.  Can we have appearances of counsel,

 6   please.

 7              MR. DALY:  Good morning, Your Honor.  Mark Daly from

 8   the Tax Division of the U.S. Department of Justice.  Here with

 9   me is AUSA Rick Murad from the United States Attorney's Office.

10              THE COURT:  Good morning.

11              MR. MANDEL:  Good morning, Judge.  David Mandel on

12   behalf of the defendant.

13              Your Honor, also I have Aaron Marcu and Kimberly

14   Zelnick from Freshfields in New York.  They would be

15   proceeding, if the court would allow, pro hac vice.

16              THE COURT:  Sure.  As long as you are here as local

17   counsel, that motion will be granted.  Good morning.

18              MR. MARCU:  Yes, sir.

19              THE COURT:  That motion will be granted.  Good

20   morning.  And Mr. Weil?

21              THE DEFENDANT:  Yes.

22              THE COURT:  This is you.  Okay.  You are here.

23   Mr. Weil, you are here for an initial appearances on an

24   indictment.  And is this unsealed, Mr. Daly?

25              MR. DALY:  Yes, it is, Your Honor.
```

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1226   Filed 02/24/17   Page 5 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 4 of 48

4

1          THE COURT:  All right.  You are here on one count.  Is

2     it a one count indictment?

3          MR. DALY:  That's correct, Your Honor.  371.

4          THE COURT:  Charging you with conspiracy to I guess is

5     it to defraud the United States or to steal from the United

6     States?

7          MR. DALY:  Your Honor, it is a 371 conspiracy to

8     defraud the United States out of income taxes.

9          THE COURT:  Okay.  Mr. Weil, this is a 371 conspiracy.

10    That's the statute name.  It is a conspiracy which means an

11    agreement to commit a crime.

12          The crime that they are alleging is a conspiracy to

13    defraud the United States out of tax money.  It is a fairly

14    long indictment that hopefully you have had a chance to read.

15          What you have a right to here today are several

16    things.

17          First, you have a right to an attorney to represent

18    you.  And is it Marcu?  Marcel?

19          MR. MARCU:  Marcu.

20          THE COURT.  Mr. Marcu?

21          MR. MARCU:  Yes, Your Honor.

22          THE COURT:  These are all temporary appearances for

23    now?

24          MR. MARCU:  Yes, Your Honor.

25          THE COURT:  All right.  Mr. Weil, you have attorneys

Case 2:16-cr-20394-SFC-APP ECF No. 51-11, PageID.1227 Filed 02/24/17 Page 6 of 49
Case 0:08-cr-60322-JIC Document 24 Entered on FLSD Docket 12/20/2013 Page 5 of 48

5

1    here representing you on a temporary basis.

2          Before we can allow you to go forward with the

3    arraignment, which is a significant step in the process, we

4    need someone to be in on a permanent basis.

5          You do have a right to a lawyer at every stage of the

6    proceedings.  So if at any stage you felt like you did not have

7    enough money to hire someone to represent you, I could take

8    testimony from you to see if you qualify for court appointed

9    counsel, but since you have counsel here today, we can go

10   forward with what we are going to do today, and we set a date

11   for inquiry re: counsel where you will come back and tell me or

12   another judge whether you have made arrangements to hire a

13   lawyer.

14         You have a right to a reasonable bond.  What is the

15   government's bond recommendation?

16         MR. DALY:  Your Honor, at this point the government

17   and the defense have been in negotiations.

18         The defense will actually make a presentation.  The

19   government believes that there may be circumstances under which

20   he could be released.

21         The government has made a number of different

22   proposals.  One would be based on the defendant's assets; a

23   corporate surety bond in the amount of $9,000,000, or in the

24   alternative that the defendant posts sufficient cash with the

25   court in an amount roughly equivalent to that.

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1228   Filed 02/24/17   Page 7 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 6 of 48

6

1       THE COURT:  Well, is there an agreement between the

2  parties, or are you proposing that we have bond hearing this

3  morning?

4       MR. DALY:  Your Honor, we propose that we have a bond

5  hearing.  There isn't an agreement, and also it cannot be

6  immediately perfected because most of the defendant's assets

7  are offshore at this point.

8       THE COURT:  Okay.  And is he pursuant to extradition,

9  or was this a voluntary return to the country?

10      MR. DALY:  Your Honor, he was extradited.  He was

11 arrested in Italy in October.  He sought home detention there.

12 Home detention was denied, and he agreed to extradition and was

13 flown into Miami on Friday.

14      THE COURT:  Okay.  All right.  Mr. Weil, I had told

15 you about counsel.

16      The attorney for the government is indicating that

17 there is I guess close to a resolution on an agreed bond.  If

18 there is an agreed bond, I normally would approve it.

19      If it is not an agreed bond, then we will just go

20 forward with the hearing.  And if your attorney is able to

21 satisfy me that the bond that is being suggested will be enough

22 to secure your appearance then, you know, I would set that or I

23 would set some other bond, or if I thought that there were no

24 conditions that would assure your appearance I could set

25 pretrial detention, but that's not being requested by anybody

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1229   Filed 02/24/17   Page 8 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 7 of 48

7

1   at this point.

2          You also, if there were not an indictment, you would

3   have a right to a probable cause hearing, but because there is

4   an indictment, that means a grand jury has already found

5   probable cause to believe you committed the crime, and so we

6   would schedule an arraignment.

7          So let's do that now.  Mr. Marcu, when do you think

8   you would be ready for making permanent arrangements so that we

9   could go forward with an arraignment?

10          MR. MARCU:  It may take another week or so, Your

11   Honor, to make permanent arrangements, but I can represent to

12   the court that I have represented Mr. Weil for 5 years, and I

13   believe that he is fully advised as to the consequences of

14   entering a plea today, and I think he is prepared to do so if

15   the court would be prepared to accept it.

16          THE COURT:  We are not, only because it is sort of a

17   rule of thumb more than a firm policy here in Fort Lauderdale,

18   but generally we don't allow anybody to go forward with an

19   arraignment until there is permanent arrangements made.

20          That's to make sure nothing falls through the cracks.

21   So we want to make sure before we start, you know, the clock

22   ticking, that he has permanent counsel.

23          So if you need a week to make arrangements, we can put

24   off the arraignment for a week and set it also for inquiry re:

25   counsel.

8

1          Does the government have any objection to that?

2          MR. DALY:  No, Your Honor.

3          THE COURT:  Okay.

4          MR. MARCU:  Your Honor, given the holidays, is it

5     possible to schedule it for the early part of next year, or is

6     that too long for you?

7          THE COURT:  It does not bother me, and it in part

8     depends on whether he gets out, but if it is what you are

9     requesting, if he is not released, he would have to sign a

10    waiver I think to get us to the end of the year, or no?

11    Debbie?

12         THE CLERK:  No, Judge.  It is already indicted.

13         THE COURT:  Okay.  That's right.

14         MR. MARCU:  I am happy, Your Honor, if we hold the

15    decision on that until after we conclude the bail hearing, and

16    it may be that we will know whether he will be --

17         THE COURT:  Well, okay.  Well, actually, Debbie is

18    right.  The time does not does kick in when there is no

19    indictment.  So it would just be, you know, if you want to have

20    the arraignment after the first of the year, that's fine.

21         Do you want to pick a date?

22         MR. MARCU:  Let's say the Tuesday, the first week of

23    January.

24         THE CLERK:  January 8th.

25         MR. MARCU:  The 7th or the 8th.  Okay.

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1231   Filed 02/24/17   Page 10 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 9 of 48

9

1          THE COURT:  All right.  So January 8th; is that right?

2          THE CLERK:  Tuesday is January 8th.  That will be at

3   11:00 a.m. before Judge Snow.

4          THE COURT:  All right.  Tuesday, January 8th at 11:00

5   o'clock before Judge Snow, and on that date we are going to set

6   it for arraignment and inquiry re: counsel.

7          Hopefully you will have had time to make permanent

8   arrangements, Mr. Weil.  At that point you will go forward with

9   the arraignment and that will set some time limits starting,

10  and so that's why we don't want to go forward without permanent

11  counsel.  So let's get back to bond.

12         Mr. Daly, why don't you explain this to me.

13         MR. DALY:  Certainly, Your Honor.  Looking through

14  this, we will just go quickly through the factors; the first

15  being the nature and the circumstances of the offense.

16         This is a conspiracy to defraud the United States.  If

17  you will, Your Honor, it is a pyramid conspiracy involving the

18  executives, managers, bankers at UBS and the customers.

19         Mr. Weil stands at the very top of that pyramid as a

20  man who oversaw the private bank at UBS.

21         The weight of the evidence is substantially in favor

22  of the government.  UBS in 2009 entered into a deferred

23  prosecution agreement in which it admitted that its employees

24  and managers had conspired to defraud the United States in

25  excess of $200,000,000 of tax money.

Case 2:16-cr-20394-SFC-APP ECF No. 51-11, PageID.1232 Filed 02/24/17 Page 11 of 49
Case 0:08-cr-60322-JIC Document 24 Entered on FLSD Docket 12/20/2013 Page 10 of 48

10

1    They paid in $780,000,000 to resolve those charges.

2  Since that time two separate banners who worked for UBS have

3  pled guilty in which they, too, admitted that they participated

4  in such a conspiracy. That would be Renzo Gadola here in the

5  Southern District of Florida and Christos Bagios.

6    A third banker, Martin Lack has been arraigned here,

7  and there is a trial date set to February. He would be another

8  conspirator.

9    Furthermore, the government's evidence at trial would

10  be substantially that which was used to that caused UBS to

11  enter into the deferred prosecution agreement. The same

12  witnesses will be available.

13    Going into the history and characteristics of the

14  defendant, family ties to the United States are none.

15    Mr. Weil and his wife reside in Switzerland. They

16  have no direct family here in the United States, that at least

17  appears in the Pretrial Services report.

18    As to employment, Mr. Weil was working with the Royce

19  Group. I probably butchered that pronunciation. However, news

20  reports indicates that he has been placed on leave since he is

21  unavailable to work for them.

22    As to financial resources, Mr. Weil's financial

23  resources are vast. He has provided Pretrial Services and the

24  government with a financial statement that lists assets, that

25  when converted to U.S. dollars, exceed 11.2 million dollars.

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1233   Filed 02/24/17   Page 12 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 11 of 48

11

1        Of that approximately 9.7 is liquid, either in the

2    form of cash or securities.

3        Length of residence in the community is zero.

4    Community ties, there are none.  Mr. Weil owned an apartment in

5    New, York but it is my understanding that in the very recent

6    past he sold that and liquidated those resources.

7        Moving down to the record regarding appearances in

8    court, Mr. Weil was indicted in 2008.  An arrest warrant was

9    issued.  He did not appear.

10       In fact, once the investigation of UBS began and

11   became known, Mr. Weil stopped traveling to the United States,

12   although he had done so in the past.

13       He was denied bail in Italy because he was viewed as a

14   flight risk there.  He is a Swiss national.  Switzerland does

15   not extradite its nationals to the United States.

16       So if he were to flee, the government would be without

17   recourse as to obtain his return.

18       Mr. Weil, as a senior executive at UBS, was extremely

19   accustomed to foreign travel, traveling throughout the world.

20       I believe at that time he held two passports.  The

21   defense has now represented that he now holds one.  That

22   passport is not here in the United States.

23       It is our understanding it is either with counsel in

24   Italy or is on route here to the United States.

25       He also owns substantial real property in Switzerland.

Case 2:16-cr-20394-SFC-APP    ECF No. 51-11, PageID.1234    Filed 02/24/17    Page 13 of 49
Case 0:08-cr-60322-JIC    Document 24    Entered on FLSD Docket 12/20/2013    Page 12 of 48

12

1    Even if he were to flee there is at least or there appears to

2    be approximately 1.45 to two million in assets should he

3    return.

4          So even if the defendant were to post all of his

5    liquid assets, he would still have substantial resources.

6          Because that money is not here in the United States at

7    present, he has a great capacity o flee should he choose so.

8          Now, the government has taken a position that they

9    will not move for pretrial detention because there are some

10   conditions that probably could insure, but the government is

11   seeking a corporate surety in the amount of $9,000,000 for a

12   substantially similar amount in cash posted with the court.

13         The defense has offered to provide a letter of credit.

14   We contacted the Clerk's Office this morning and they indicated

15   they would not accept that as a form of bond.

16         I just represent that to Your Honor as one form that

17   that they have offered to post.

18         THE COURT:  All right.  So the government is no longer

19   requesting pretrial detention, even though did he fight

20   extradition?

21         MR. MARCU:  No, Your Honor.  He agreed to be

22   extradited without contesting.

23         THE COURT:  Okay.

24         MR. MARCU:  And he also I should say waived

25   extradition from Switzerland as well in writing, so that if he

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1235   Filed 02/24/17   Page 14 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 13 of 48

13

1  returns to Switzerland for any reason, he would not be able to

2  take advantage of any Swiss legal protection that would prevent

3  extradition.

4          THE COURT:  Is that law enforceable in Switzerland?

5          MR. MARCU:  Yes, Your Honor.

6          MR. DALY:  That is an open question, Your Honor.

7  There are very few nationals who are ever extradited from

8  Switzerland.

9          The government highly doubts that that is enforceable.

10  Mr. Weil can contest that he was forced to sign it under

11  duress, and it is likely not enforceable.

12          THE COURT:  All right.  But do you agree that he

13  waived extradition from Italy?  What?  He was arrested in

14  Italy?

15          MR. DALY:  He was arrested in October.  He repeatedly

16  sought home detention, taking numerous appeals to the Italian

17  Court of Appeals.

18          After he was rejected numerous times, then he agreed

19  to extradition.  I know the defense has countered that it was

20  only once he was able to consult with U.S. counsel that he did

21  it, but he was there for over a month and a half, or at least a

22  month before he consented.

23          THE COURT:  What is his exposure?

24          MR. DALY:  His exposure, UBS has agreed that the tax

25  loss was approximately 200,000,000.  The count for Mr. Weil, it

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1236   Filed 02/24/17   Page 15 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 14 of 48

14

1   is a 5 year maximum.  His sentencing guidelines, quite frankly,

2   are in the range of 240 months, even though he is capped at 60.

3          THE COURT:  And you indicated that two other bankers

4   are here and have pled guilty already.

5          What exactly was Mr. Weil's position within the bank?

6          MR. DALY:  So Mr. Weil was the head of the private

7   bank throughout the world.  So he oversaw all of their private

8   banking world-wide.

9          So below him would be managers of the U.S.

10  cross-border business.  So below them would be the U.S.

11  cross-border business was divided into 3 groups; geographically

12  one in Zurich, one in Geneva and one in Laganow, and then there

13  were approximately 60 private bankers below that and then

14  20,000 U.S. clients.  So he stands at the very apex of that

15  pyramid.

16         THE COURT:  And what is the status of the two others?

17  Did they get bond?  Have they pled?

18         MR. DALY:  They both pled and were sentenced to time

19  served.  They are, as terms of their probation they are

20  required to cooperate with the United States in any ongoing

21  investigations, and the third Martin Lack has a trial date

22  before Judge Dimitrouleas in February.

23         THE COURT:  Okay.  And do you believe that a

24  $9,000,000 corporate surety bond would be sufficient to compel

25  his appearance?

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1237   Filed 02/24/17   Page 16 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 15 of 48

15

1          MR. DALY:  The government believes that that likely

2    would.  That's probably the best form of security that we can

3    get that would insure that he appears.

4          THE COURT:  And have you discussed alternatives with

5    defense counsel, alternatives to a $9,000,000 corporate surety

6    bond?

7          MR. DALY:  We have discussed alternatives.  The

8    defense has presented that there is difficulties because much

9    of their assets are in securities which would have to be

10   liquidated, and so they are reluctant to do so.

11         THE COURT:  Well, let me hear from the defense.

12         MR. MARCU:  Thank you, Your Honor.  If I could, I will

13   take issue with some of what Mr. Daly has told you, but rather

14   than enter into a debate, if I can just first give you a little

15   background.

16         Mr. Weil worked at UBS and a predecessor bank for 25

17   years.  He rose from being a bit of a technocrat who handled

18   the establishment of processes and offices and demonstrated

19   through his organizational skills that he could run a bigger

20   organization.

21         He was never a client, a person that never had

22   clients, never sold services of the bank.  He was a manager,

23   and ultimately he became in 2008 the CEO of UBS' wealth

24   management and business banking division, which is the largest

25   division of UBS.

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1238   Filed 02/24/17   Page 17 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 16 of 48

16

1          So he was the third highest ranking executive of the

2     entire bank.  At the time he was at the apex of the wealth

3     management and private bank division, but that was not just the

4     U.S. cross-border business; that is, U.S. persons who were

5     banking with UBS in Switzerland as opposed to in the U.S.

6          He was at a much, much bigger apex of essentially two

7     thirds of UBS, and he oversaw four trillion dollars in assets

8     of which the U.S. portion that is involved in the indictment is

9     approximately 200,000,000.

10          So we are talking about not a small club of brokers

11     and executives, but a massive organization at which he was in

12     charge of the entire thing.

13          The indictment that was issued came as a complete

14     surprise when it came out because Mr. Weil was at the time

15     working out, he had been working out terms of a voluntary

16     interview of him in Washington by the Department of Justice.

17          We had been told that he would be given safe passage

18     if he came to give an interview, but then when asked to accept

19     service of process on his behalf, I was asked to, if he came to

20     the U.S., and I had a discussion with the government about what

21     that meant, since I wanted to know what process they wanted to

22     serve on him.

23          I said, "If you have some process," which I assumed

24     would be a subpoena, "let me know and I will talk to him and

25     about it and get right back to you."

Case 2:16-cr-20394-SFC-APP  ECF No. 51-11, PageID.1239  Filed 02/24/17  Page 18 of 49
Case 0:08-cr-60322-JIC  Document 24  Entered on FLSD Docket 12/20/2013  Page 17 of 48

17

1        The prosecutor at the time was getting involved in

2  another major trial and didn't respond to calls for a long

3  time.

4        So the bottom line was we thought we were arranging

5  for a voluntary interview of the senior person in the banking

6  business for UBS that was relevant here, and instead an

7  indictment suddenly was issued.

8        It was a highly, highly unusual situation in a tax

9  case where someone would be indicted without any notice and

10  opportunity to have a pre-indictment conference with the tax

11  division.

12        He was living in Switzerland and working in

13  Switzerland at the time.  He didn't run from the United States.

14        He never fled.  He continued to live in Switzerland

15  and worked there.  When he left UBS, which became necessary for

16  him very quickly, because they couldn't very well have an

17  indicted individual be the CEO of your biggest division, he

18  eventually got new employment in a private company and

19  continued to live and work under his own name and his own

20  apartment as he always had for the next 5 years.

21        He traveled around Europe on business for the company.

22  He took vacations in various places and stayed in hotels and

23  always traveled under his own name.

24        While the government said he had two passports, there

25  was a time when he had two passports, one of which he used

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1240   Filed 02/24/17   Page 19 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 18 of 48

18

1    exclusively to travel to the Middle East, and others when he

2    used to travel elsewhere including Israel because of political

3    issues with traveling to Israel on the same passport or rather

4    to the Middle Eastern non-Israeli countries on a passport that

5    showed he had been in Israel.

6            That's the only time he had two passports, and he now

7    has only one.  Both were in his own name.  The same

8    information.  The same birth date.  So no effort to in any way

9    conceal or change or mislead his identity.

10           THE COURT:  But during this time he and you were aware

11   that there was an arrest warrant for him?  Is that what was

12   supposed to be served upon you was an arrest warrant or was it

13   a subpoena?

14           MR. MARCU:  Well, I now know it was an indictment, but

15   I didn't know at the time.  The only thing is I found out

16   after.

17           THE COURT:  But at the time he is openly traveling

18   throughout other countries in Europe, was he aware of an

19   indictment and/or an arrest warrant?

20           MR. MARCU:  An indictment, yes.  We didn't know

21   specifically about an arrest warrant, and we didn't know

22   whether there would be any kind of a notice was given to

23   Interpol for, you know, international apprehension.

24           So for years he travel unencumbered and went to

25   different countries without an issue.

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1241   Filed 02/24/17   Page 20 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 19 of 48

19

1            It was only in October when he was on vacation with

2    his wife in Italy that he was suddenly arrested.

3            He went to Boulogne Prison, and although I obtained

4    through counsel in Italy an order from the court permitting me

5    to have communications with him by phone, the Italian prison

6    just would not set up an arrangement.

7            So I traveled to Boulogne to meet with him, at which

8    point we had a communication, and I had been in communication

9    with the government quite promptly, and I think it was about

10   perhaps a month or less than 5 weeks, but about a month after

11   he was first arrested, but the first time that we talked I

12   communicated to the government that we were prepared to waive

13   extradition.

14           So I would like the court to appreciate that it was

15   the circumstances of his detention in Italy that prevented me

16   from communicating at an earlier time with him and, therefore,

17   him communicating through me to the government that he was

18   prepared to return to the U.S.

19           After we said that we were prepared for an extradition

20   and, indeed, executed a consent in Italy, which included

21   Switzerland, and Italy does not include Switzerland, the

22   consent includes a consent of extradition from Switzerland as

23   well, at that point we did again initiate a request for home

24   confinement which had been granted by the first judge that he

25   appeared before, and it was at that time that after

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1242   Filed 02/24/17   Page 21 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 20 of 48

20

1  intervention by the Department of Justice the Appellate Court

2  reversed that decision.

3         So we had that one appeal, and after the extradition

4  process was well underway, we were cooperating with the U.S.

5  and the Italians to coordinate that in as expeditious a fashion

6  as possible, then we made another application for home

7  confinement, not knowing how long it would be.

8         So that was the extent of the litigation with respect

9  to home confinement, and we did consent to the use of

10  electronic monitoring so that his whereabouts would be known to

11  the Italian Government.

12         Now, we had proposed, and I should say to Your Honor

13  in the 5 years between the time he was indicted and the time he

14  was arrested, there was never a hearing or an arraignment set,

15  a date for a first appearance.

16         I was never asked to bring him to the United States.

17  There was no order that he come to the U.S. for arraignment.

18         He did not, indeed, come to the U.S. during those 5

19  years, but what he did was go about his life.

20         He didn't go to some exotic African country where he

21  set up a new life where he could avoid arrest.  He didn't take

22  any steps to avoid detection or arrest.

23         He lived, as I say, in Switzerland and he traveled

24  around Europe and, indeed, other places on accommodation of

25  business and vacation without incident.

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1243   Filed 02/24/17   Page 22 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 21 of 48

21

1          He wants to get this matter resolved.  It has been

2     hanging over him for 5 years.  He was the head of major banking

3     institution, and he has been charged with conspiring with

4     unknown taxpayers, who he has never met, to enable them to

5     evade their U.S. taxes.

6          He doesn't know these people.  He has never met them,

7     and we don't, of course, have the discovery yet, so I don't

8     know any of the particulars, except to say that the suggestion

9     that there is a small cadre of tax evaders at UBS who were at

10    UBS who were conspiring here is a bit of an understatement

11    let's say not in the sense as a criminal aspect, but in the

12    sense that it was a vast business, and this was a very tiny

13    perhaps one percent of the business that Mr. Weil oversaw.

14          So in terms of the weight of the evidence, while I

15    can't address it directly, I can say that the only witnesses

16    that I am aware of are people who have a very, very distinct

17    motive to inculpate their superiors.

18          I have no reason to believe that any evidence the

19    government has to that effect is actually credible or would be

20    believed.

21          I can tell you that there was one proceeding that

22    examined his role and his potential involvement in this

23    conspiracy, and in that proceeding which was before the Swiss

24    Banking Commission, there was testimony taken and there were

25    presentations made, and the court found that the government's

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1244   Filed 02/24/17   Page 23 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 22 of 48

22

1   principal witness was not credible and that Mr. Weil was not

2   involved and was not aware of any wrongdoing by any of these

3   underlings who were multiple levels below him in the structure

4   of the bank.

5          So I think that the weight of the evidence at the very

6   best, very best is equivocal, and so I would hope that the

7   court would take into account that we have not had any

8   opportunity to defend in the one proceeding where Mr. Weil was

9   vindicated.

10          In terms of the security for release, we have proposed

11   first home confinement.  We have identified and recommended a

12   family, very close friends of the Weil family who have agreed

13   to take Mr. Weil as their guest.

14          We have given the particulars to the government and to

15   pretrial, but out of deference to their privacy I wouldn't want

16   to mention it on the record, but I am prepared to share all of

17   that information with the court.

18          THE COURT:  They are here in South Florida?

19          MR. MARCU:  No.  They are in New Jersey, Your Honor.

20   They are a lovely couple.  Very modest.  They live in a small

21   home in central New Jersey.

22          The husband was, I prefer not to say more if the court

23   would permit.

24          THE COURT:  Why don't you just answer I guess a

25   specific question.  Is this where you anticipate that he would

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1245   Filed 02/24/17   Page 24 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 23 of 48

23

1   be living if he were released?

2            MR. MARCU:  Yes, Your Honor.

3            THE COURT:  So you would be asking that he not even

4   stay in this district and that he go to New Jersey?

5            MR. MARCU:  We will ask for permission for him to

6   travel between here and New Jersey.  So this way he will be

7   close to me as well because I am based in New York.

8            THE COURT:  Okay.

9            MR. MARCU:  And I would be able to consult with him

10  more readily then if he is down here.

11           THE COURT:  And this couple, you have shared their

12  information with the government.  Are they U.S. citizens?

13           MR. MARCU:  U.S. citizens.

14           THE COURT:  Prior convictions?

15           MR. MARCU:  No prior convictions.  They have lived in

16  their own home for many, many years.  They have, in fact, law

17  enforcement and military backgrounds within family, the husband

18  and one of the children.

19           Again, I would be happy to share the details with the

20  court if we could do that without compromising the identity of

21  the people which I have shared with the government.

22           So he would have electronic monitoring which the

23  electronics which are being installed today in the house in the

24  hopes that the court will be amenable to this arrangement.

25           The passport of Mr. Weil which right now is even

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1246   Filed 02/24/17   Page 25 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 24 of 48

24

1    enroute from Boulogne.  We had it sent to Boulogne so that he

2    could carry it with him here when he left the prison, and that

3    way we would be able to surrender it or at least hold it as the

4    Court directed, but, unfortunately, there was no notice that he

5    was being taken, and so it was left in the hands of his Italian

6    counsel.

7         They have told me this morning that it has been sent

8    here by courier.  We should have it here in this district I

9    think tomorrow, and we are prepared to either hold it or

10   surrender it as Your Honor directs.

11        THE COURT:  All right.  The family that he would be

12   living with, have they been advised of the consequences?  Well,

13   first of all, are they willing to co-sign on a bond?

14        MR. MARCU:  They have been advised of the consequence.

15   May I take your questions in reverse order?

16        THE COURT:  Sure.

17        MR. MARCU:  They have been advised of the

18   consequences.  I personally spent time with them so that they

19   understand what would be entailed.

20        They are very prepared to have Mr. Weil as their

21   guest.  They have every confidence in him.  We have not asked

22   them to co-sign a bond, and so that that question has not been

23   posed.

24        Mr. Weil and Mrs. Weil would co-sign the bonds, and

25   Mrs. Weil is here in the courtroom.  She traveled here

Case 2:16-cr-20394-SFC-APP  ECF No. 51-11, PageID.1247  Filed 02/24/17  Page 26 of 49
Case 0:08-cr-60322-JIC  Document 24  Entered on FLSD Docket 12/20/2013  Page 25 of 48

25

1  yesterday from Switzerland to be here in court.

2  She is prepared to basically encumber two-thirds of

3  her assets in order to help secure her husband's bail.

4  Mr. Weil is prepared to offer essentially all of his

5  assets; all of his liquid assets in order to secure his bail

6  because they both are that confidant that he is going to appear

7  for court when required.

8  So that's in addition to the fact that without a

9  passport it is difficult to travel out of the United States,

10  and that he will be electronic monitored by Pretrial Services.

11  So there are already those two levels of security.

12  We have proposed an amount that totals about 4 and a half

13  million dollars, Your Honor.  I am prepared today to use the,

14  attached to my escrow account that came from the sale of their

15  apartment to be posted with the Court to secure his PRB.

16  We are prepared to either pledge or deposit with the

17  court an amount of $2,000,000 which is the balance of his

18  liquid assets, and we are prepared to arrange for the issuance

19  of a letter of credit by a reputable U.S. bank.

20  That would be secured by Mrs. Weil's assets.  The

21  amount of the letter of credit we propose is $2,000,000 in

22  addition, and that would be secured by $4,000,000 worth of her

23  assets in Switzerland, and that as I say would be two-thirds of

24  her net worth.

25  So substantially all of their liquid assets, a

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1248   Filed 02/24/17   Page 27 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 26 of 48

26

1   substantial portion of their liquid assets would be pledged,

2   and Your Honor I have a financial statement that we have

3   prepared for the court.

4           We have given it to the government and to Pretrial

5   Services.  I am happy to review it with Your Honor to share the

6   particulars, but, in essence, a very, very substantial portion

7   of their net worth would be dedicated to guaranteeing that

8   Mr. Weil appeared for court.

9           I think under the circumstances, Your Honor, in a

10  case in which he has never run, he has never tried to hide, he

11  has traveled only under his own identity, and his only passport

12  would be surrendered to the court where we are providing assets

13  or cash that are a substantial portion of their assets and what

14  they would have available to them, and, Your Honor, we do need

15  to lose I am sorry to say some, I would ask that we be able to

16  leave some of these assets available for the payment of

17  expenses, including the cost of the defense here.

18          So there would be very little in the way of

19  disposable income, disposable assets left to fund a life on the

20  run, and the reason Mr. Weil is here today and not a couple of

21  years from now is because he wanted to put this behind him, and

22  the only way to do that is to waive extradition and appear in

23  this court as soon as possible and begin the process of

24  litigating this case.

25          THE COURT:  Well, Mr. Daly, a couple of things.

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1249   Filed 02/24/17   Page 28 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 27 of 48

27

1   Mr. Daly indicated that there is a problem with accepting a

2   letter of credit to secure a bond.  Mr. Daly is that with a

3   bondsman or with the?  Court.

4          MR. DALY:  It would be with the court.  Mr. Murad and

5   I consulted the Clerk's Office this morning and they said that

6   for bond they would only accept a cash or a money order; that

7   they would not accept a letter of credit.

8          THE COURT:  Well, as long as I am talking to you

9   Mr. Daly, the people that he is going to be living with and

10  that they are proposing to live with, do you have their

11  information?

12         MR. DALY:  We learned their names this weekend.  We

13  haven't had a chance to investigate anything about them.

14         You know, the government would prefer that he be in

15  South Florida so he could be here near the court, but we do

16  understand that he may have representation outside.

17         Really the government was particularly focused on the

18  cash security, but, you know, we will start to investigate the

19  home confinement aspect today.

20         THE COURT:  Mr. Daly, what you are asking for is a

21  corporate surety bond.  It seems to me that what Mr. Marcu is

22  proposing is some structured cash bond or a 10 percent bond, or

23  something of that nature.  Are you comfortable with that, or do

24  you want a bondsman?

25         MR. DALY:  I am sorry.  Pardon me.  Have we come to

Case 2:16-cr-20394-SFC-APP  ECF No. 51-11, PageID.1250  Filed 02/24/17  Page 29 of 49
Case 0:08-cr-60322-JIC  Document 24  Entered on FLSD Docket 12/20/2013  Page 28 of 48

28

1  the PRD with some form of security?

2          THE COURT:  No, and maybe you are not from here.  I

3  don't know if they do it the same in every district.  I don't

4  think they do, but a corporate surety bond here, anyway,

5  requires that a bondsman be engaged; that property be pledged

6  and that a 15 percent nonrefundable premium be paid.

7          The court, I assume that since you said you inquired

8  of the Clerk's Office about what they would accept, that you

9  also were talking about a 10 percent bond which is in this

10  district what we call it, it would be a large amount, but 10

11  percent would be posted with the Clerk of the Court.

12          So are you comfortable with some combination of a

13  personal surety bond co-signed by the people he is going to

14  stay with and a large 10 percent bond with assets posted with

15  the court, but he would get it back as long as he complied with

16  all of his conditions, or did you want a corporate surety bond?

17          MR. DALY:  If you don't mind, Your Honor, if I might

18  just consult with counsel.

19          THE COURT:  All right.

20          MR. DALY:  Your Honor, we have two issues.  First, I

21  don't think the government is as comfortable with the personal

22  recognizance bond.  If he is left with $7,000,000 in assets,

23  the government does believe that that is an incentive to flee.

24          THE COURT:  No, no.  Don't misunderstand me.  I think

25  if I am going to set any bond at all, I think I would like the

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1251   Filed 02/24/17   Page 30 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 29 of 48

29

1   people, and I am not used to doing this with any kind of

2   secrecy, the people, I will honor your request to keep their

3   address, or whatever, but we need to know who they are.

4         I would want them co-signing on a personal surety bond

5   so they have got some stake in this as well.

6         In addition to that, I would be willing to set either

7   a corporate surety bond or a 10 percent bond or a combination

8   that would require a substantial amount of his assets and his

9   wife's assets, you know, encumbered.

10        So I am not talking about just a straight personal

11  surety bond.  I want someone in the United States with some

12  skin in the game, and you are going to have talk to those

13  people and see if they are willing to do it.

14        A personal surety bond, again, the nomenclature is

15  different in different courts, but a personal surety bond would

16  require them to co-sign.

17        Mr. Weil, if you took off and left them holding the

18  bag, they would be sued for a large amount of money by the

19  government.  So that is somebody who we know who lives here,

20  who has some ties here because you have no ties here.

21        So that would be, you know, what I am anticipating

22  here is a combination bond where the people that you are living

23  with have a stake in keeping you here and not assisting you in

24  fleeing, but I generally don't have a great interest in making

25  bondsmen rich.

Case 2:16-cr-20394-SFC-APP  ECF No. 51-11, PageID.1252  Filed 02/24/17  Page 31 of 49
Case 0:08-cr-60322-JIC  Document 24  Entered on FLSD Docket 12/20/2013  Page 30 of 48

30

1         So if we set a $9,000,000 corporate surety bond, then

2    it is going to be a very merry Christmas for a bondsman, but my

3    concern generally is if there are assets, that those assets be

4    put up, be held securely.

5         I would rather that it be with the court than with a

6    bondsman, and then the 10 percent insures that if he were to

7    flee, he could be sued for much more.

8         So that's why I am asking you, and I am open to a

9    combination where, I mean if he is going to be released I don't

10   want to do it with a $9,000,000 corporate bond.

11        I think it is reasonable to ask for a part of that to

12   be a corporate bond, but part of it to be a 10 percent bond.

13        Like I said, I would never release him on just a

14   signature, but having people here in the United States

15   responsible for his appearance I think can be very powerful as

16   well.

17        MR. DALY:  Your Honor, quite frankly, we don't know

18   enough about the family to know if that is worth, to see if

19   their guarantee is worth anything.

20        Quite frankly, from what we have been told, they are a

21   fairly elderly couple.  The defendant could agree to have them

22   sign on and then repay them once he gets back to Switzerland.

23        It is without knowing more about who they are.  It is

24   very difficult for the government to agree to such an

25   arrangement.

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1253   Filed 02/24/17   Page 32 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 31 of 48

31

 1          THE COURT:  Address one more thing for me because I am

 2    not comfortable with it.

 3          Let me ask you, Mr. Marcu, the waiver of extradition

 4    that was signed purporting to waive extradition from

 5    Switzerland, you said that it would be enforceable in

 6    Switzerland.  I think the government said they were not so

 7    sure.  Why don't you tell me about that.

 8          MR. MARCU:  My understanding is, Your Honor, that a

 9    Swiss national is permitted to waive the protection of the

10    Swiss Constitution which prevents, ordinary prevents the

11    extradition of Swiss nationals, and what Mr. Weil has done is

12    before a court in Italy he has signed a voluntary waiver that

13    covers extradition both from Italy and from Switzerland, so

14    that there is no question that if he is returned to Switzerland

15    there will be a waiver that we would, I tell you today it is

16    binding and we would take the position with regard as to an

17    academic point because he is not going back to Switzerland or

18    anywhere else, but the point was to make it clear to the Swiss

19    Government in advance that Mr. Weil is waiving any protections

20    under the Swiss Constitution so that he could be extradited if

21    he were to flee black to Switzerland.

22          If I could, Your Honor, this is a man who has no

23    record.  He has never had an arrest.  He has served in the

24    military in Switzerland.

25          He worked for the same bank for 25 years.  He was one

Case 2:16-cr-20394-SFC-APP  ECF No. 51-11, PageID.1254  Filed 02/24/17  Page 33 of 49
Case 0:08-cr-60322-JIC  Document 24  Entered on FLSD Docket 12/20/2013  Page 32 of 48

32

1    of the senior executives of a massive institution, and he is

2    charged with aiding and abetting the alleged activities of

3    people who were far below him in the corporate structure.

4            There is very little reference to him in the

5    indictment.  The indictment itself, which was issued without

6    notice and very precipitously while the U.S. was fighting with

7    both the Swiss and with UBS over whether UBS and the Swiss

8    Government were going to abandon began secrecy in Switzerland,

9    which they now have done as a result of the case and as a

10   result of the indictment of Mr. Weil.

11           It sent a very strong message to the Swiss Government

12   and UBS which led to that settlement, and he didn't run even

13   then because he wasn't in the United States, and he had never

14   taken any steps to conceal his identity, to change his identity

15   or to conceal his whereabouts.

16           So I just want to impress upon the court the risk of

17   flight here is totally theoretical, and we would be countering

18   that risk with the surrender of the passport, the home

19   confinement, the electronic monitoring, a huge amount, a huge

20   percentage of their assets which would make it virtually

21   impossible for him to flee, even if he chose to and maintain

22   any kind of life thereafter; a waiver of extradition from

23   Switzerland and Italy so that he cannot go back to his own home

24   or where his parents are.

25           I just think that the risk that is presented is so

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1255   Filed 02/24/17   Page 34 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 33 of 48

33

1  theoretical that given all of those protections that we offer,

2  that it is over-balanced.  It is overborne by those

3  protections.

4       I suggest to the court that that would provide a

5  reasonable assurance that he will appear in court.  We are

6  happy to have the usual kinds of restrictions on his ability to

7  travel so that he will be limited to various kinds of

8  activities that would include consulting with his counsel.

9       He has no ties in Florida.  That is true.  These

10  friends in New Jersey are very good friends.  They have been

11  good enough to offer to have him in their home for as long as

12  is necessary.

13       It would be a substantial additional imposition and

14  request to ask them to co-sign a bond, but I appreciate the

15  what the court has had to say about that.

16       I would ask that perhaps that be reconsidered, but to

17  Your Honor's point about the alternative, rather than looking

18  to a corporate surety bond which would cost Mr. Weil, if it is

19  in an amount that the government has been proposing, would be

20  approximately one and a half million dollars which I think

21  would be extraordinarily punitive and really not necessary

22  under the circumstances, but what we have proposed is an amount

23  in a form that would completely encumber two-thirds of their

24  assets.

25       It would leave them with some liquid assets that would

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1256   Filed 02/24/17   Page 35 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 34 of 48

34

1  enable them to pay expenses and for the defense of what might

2  be a very, very long and contested criminal case, but it would

3  provide the court with a reasonable assurance that he will

4  appear.

5          If the letter of credit which we have used in other

6  cases, and I can hand up an example to Your Honor, if it is

7  helpful, to secure the presence of an individual has been

8  acceptable to courts in other parts of the country.

9          We are happy to discuss that with the Clerk's Office

10 here and help them understand what the mechanics are because it

11 is a very readily convertible guarantee into cash, in the event

12 that the court holds that Mr. Weil has violated the terms of

13 his release or fled.

14         It would be irrevocable.  It would be a promise that a

15 reputable major U.S. bank would be paying on that letter of

16 credit in the event that the court finds that Mr. Weil has

17 absconded or otherwise violated his bail conditions.

18         THE COURT:  You have done that in other courts as a

19 cash bond or as security for a corporate bond, or how does it

20 work?

21         MR. MARCU:  As a security for a PRB, Your Honor.  For

22 an appearance bond.  I am sorry if I have the terminology

23 wrong, but we call it in New York a PRB or a personal

24 recognizance bond, but it is your 10 percent bond that you

25 sign.

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1257   Filed 02/24/17   Page 36 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 35 of 48

35

1        You either don't or you do put down some security.  In

2   cases where that we have been involved in or know about, what

3   has been offered to secure that 10 percent or to present that

4   10 percent is a letter of credit from a major bank.

5        THE COURT:  One more question for you, Mr. Daly.

6        The docket sheet indicates that this was unsealed back

7   in 2008 and was transferred to fugitive status which doesn't

8   always mean that someone is actually a fugitive.

9        Do you have any reason to believe that in the

10  intervening years between late 2008 and his arrest in Italy

11  that he was actively fleeing or trying to avoid prosecution?

12       MR. DALY:  Your Honor, to one extent Mr. Weil never

13  returned to the United States.  We had numerous meetings with

14  his counsel in which they proposed alternatives to criminal

15  prosecution.

16       So the defendant was fully aware that the charges were

17  pending against him.  The government does not know the extent

18  to which he traveled within Europe, but just as a brief point,

19  that is within what is called the Schengen Visa area which

20  means there are no border checks within that area, so the

21  chance of being detected is effectively zero if there is an

22  outstanding Interpol red warrant.

23       Mr. Weil got caught because Italy changed its rules

24  and they started requiring hotels to provide their guest

25  registers to the police every night with their passports, and

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1258   Filed 02/24/17   Page 37 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 36 of 48

36

1    so it is only because the Italian police ran his passport

2    against outstanding warrants that he was caught.

3         So the fact that this claim that Mr. Weil was

4    traveling openly is a little bit, it has to be taken with a

5    grain of salt.  I think Mr. Weil felt a sense of security

6    knowing that he wouldn't be detected in traveling.

7         MR. MARCU:  Your Honor, to the contrary.  Mr. Weil

8    traveled multiple, maybe, you know, 30, 40 times into other

9    countries and stayed in hotels on many occasions; hotels in

10   Germany, in Italy, in other places where there often are

11   similar rules, and we would have had no way of knowing one way

12   or the other whether the hotels were given their guest lists to

13   the authorities, but even in Italy when Mr. Daly says that the

14   only reason he was caught was because the Italians looked at

15   the guest register or it was reported to the Italian

16   authorities, it was because he gave his own identification

17   documents to the Italian hotel that they knew that he was

18   there.

19        So just to be clear, there has never been, I don't

20   believe there is, and I am confident there is no evidence,

21   because it never happened, that Mr. Weil took any steps to

22   evade detection to avoid capture, to conceal his identity.

23        The only thing he didn't do was come to the United

24   States which we would stipulate he did not do.

25        THE COURT:  Okay.

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1259   Filed 02/24/17   Page 38 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 37 of 48

37

1      MR. MARCU:  And I would say to the court that that

2  kind of behavior is not being a fugitive when you haven't run

3  and you haven't flouted process.

4      There was never an order or an appearance date for him

5  to appear here.  He simply went about his business staying in

6  his own country or in Europe and elsewhere on business

7  traveling, as I say, under his own identity.

8      THE COURT:  Okay.  Mr. Daly, are you saying that there

9  was an Interpol red notice, but it is not enforced within the

10  European Union?

11      MR. DALY:  Most European countries, first of all, they

12  have to know that you are there, and if there is no border

13  check where they scan your passport, they are not going to

14  know.

15      The only way the Italians picked it up was by checking

16  the guest register.

17      THE COURT:  Okay.

18      MR. DALY:  Your Honor, if I may also just make one

19  comment.  Even if bond is granted, their currently is an

20  Immigration detainer on Mr. Weil.  I just wanted to make the

21  court aware of that.

22      THE COURT:  Well, tell me about that.  Is that going

23  to prevent him from being released and why is there an

24  Immigration detainer on him?

25      MR. DALY:  Possibly.  Here I have to plead ignorance,

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1260   Filed 02/24/17   Page 39 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 38 of 48

38

1  as part of the tax division.

2          THE COURT:  I see you have an immigration expert right

3  behind you.

4          MR. MANDEL:  We just heard about this.

5          MR. MARCU:  This is complete news, Your Honor.

6          MR. DALY:  it IS Possible because he has liquid assets

7  that they may release him, but we have noticed today that when

8  he was brought in through Customs, that they placed an

9  immigration detainer on him.

10         THE COURT:  All right.  Here is what I want to do:

11         Mr. Daly, you are not asking for detention, so I am

12  not going to detain him.  There is obviously limited ties here.

13  There is a lot of money and an ability to flee.

14         On the other hand, he waived extradition, and since he

15  is capped at 5 years, he is looking at jail time, but not

16  overwhelming jail time.

17         I will not any comment about the strength of the

18  evidence.  So it seems that the government is willing to agree

19  to some type of bond as opposed to detention.

20         What I would be inclined to do, and it sounds like he

21  is not going to be released today no matter what I do here

22  today, if there is an immigration hold, Mr. Daly, when I talked

23  to both of you, when I talked about, you know, wanting some

24  assurances from the family he is going to staying with, I

25  realize that is an imposition, but that is a good thing in my

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1261   Filed 02/24/17   Page 40 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 39 of 48

39

1  view.

2           I mean, I think that I am going to require that but,

3  Mr. Daly, that is not in place of any financial bond.  So what

4  I am inclined to do is require the people that he is living

5  with to co-sign onto a personal surety bond which would not

6  require them to put any money up, but if Mr. Weil flees, they

7  are on the hook for a significant amount of money, and then

8  some combination of a corporate surety bond and a 10 percent

9  bond or cash bond here in this district.

10          What I would like to do, it seems to me or what it

11 sounds to me, Mr. Daly, like you are not asking for me to hold

12 him in custody.  You just want some significant assurances.

13          If that is the kind of bond that I am prepared to do I

14 would give you time to make sure that these people in New

15 Jersey are legitimate people who are going to be and for you,

16 Mr. Marcu, to make sure that they would be willing to co-sign.

17          What I want to do is pass this case over just for a

18 few minutes and let the lawyers talk about it and see if you

19 can come to a proposal for me to release him on a combination

20 if need be of a corporate surety bond, a secured 10 percent

21 bond and a personal surety bond co-signed by the people in New

22 Jersey.

23          Immigration is something that I can't do anything

24 about, but it seems kind of strange that the Immigration

25 authorities would hold him when he was brought here on an

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1262   Filed 02/24/17   Page 41 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 40 of 48

40

1  extradition, so that may be an additional bond that you are

2  going to have to post, but if you cannot come to an agreement,

3  then I will set a bond, but within those parameters why don't

4  you take a few minutes and see if you can give me a proposal

5  that we can all agree on.

6        MR. DALY:  Thank you, Your Honor.

7        MR. MARCU:  Thank you, Your Honor.  Can I ask for one

8  clarification?

9        THE COURT:  Yes.

10       MR. MARCU:  I trust that in place of a corporate

11  surety bond which would be very expensive, and there is no

12  recovery, even if there is an acquittal for the allotment of

13  the fee, that we could post cash with the court in place of

14  that component.

15       THE COURT:  Well, talk to the government about that

16  because the additional benefit to both the court and the

17  government to have a corporate surety bond is that there is a

18  bondsman who would go out looking for him instead of just the

19  U.S. Marshals.  So take a minute and talk about it and see if

20  you can reach agreement.

21       MR. MARCU:  I have seen that T.V. show.

22       THE COURT:  All right.  Let's pass this over for now.

23       MR. MARCU:  Thank you, Your Honor.

24       MR. DALY:  Thank you.

25       THE COURT:  All right.

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1263   Filed 02/24/17   Page 42 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 41 of 48

41

```
 1                    [There was a short recess].

 2             THE COURT:  Mr. Daly.

 3             MR. MARCU:  Excuse me, Your Honor.  Your Honor, may I

 4   have just one moment, please, before we begin?

 5             THE COURT:  Sure.  How are we doing?  Do we have an

 6   agreement?

 7             MR. MARCU:  I believe we do, Your Honor.  It will be

 8   subject to confirming the co-signing of the bond by the

 9   third-party that we talked about.  I believe what we agreed to,

10   do you want to state it?

11             MR. DALY:  Sure.  Your Honor, the terms that we have

12   proposed to the defendant which I believe he has accepted is

13   that the defendant would deposit with the court $4,000,000 in

14   cash.

15             THE COURT:  Okay.

16             MR. DALY:  That the defendant would secure an

17   additional corporate surety in the amount of $1,000,000.

18             Now, the $4,000,000 in cash would secure a personal

19   recognizance bond.  The government would request it in the

20   amount of 9,000,000.

21             There would be a second bond security by the family in

22   the amount of, at this point we don't quite know their

23   financial situation.

24             MR. MARCU:  Anything that has 6 figures in it would be

25   far more than their net worth, I would suspect.
```

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1264   Filed 02/24/17   Page 43 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 42 of 48

42

1      MR. DALY:  Tentatively actively we would ask for half

2  a million dollars.

3      THE COURT:  That's co-signed by the couple in New

4  Jersey?

5      MR. DALY:  That's correct, Your Honor.

6      THE COURT:  And is HIS wife co-signing anything?

7      MR. DALY:  I believe we would ask that she co-sign a

8  personal recognizance bond secured by 4,000,000 in cash.

9      MR. MARCU:  That would be acceptable, Your Honor.

10      THE COURT:  Okay.  When you say $4,000,000 in cash

11  secured, is that pledged or is that deposited with the registry

12  of the court?

13      MR. DALY:  That is deposited.

14      THE COURT:  And that's acceptable to the defense?

15      MR. MARCU:  Yes, Your Honor.

16      THE COURT:  Debbie, how do we do that?  So that what

17  you are proposing is a $9,000,000 bond security by $4,000,000

18  in cash?

19      MR. DALY:  Correct.

20      THE COURT:  And then a one million dollar corporate

21  surety bond and a $500,000 personal bond co-signed by the two

22  in New Jersey?

23      MR. DALY:  New Jersey.

24      THE CLERK:  The 4,000,000 cash has to be, it would

25  have to be 10 percent of 480

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1265   Filed 02/24/17   Page 44 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 43 of 48

43

 1          THE COURT:  I don't think it does.  I think that a

 2   percentage bond, although we normally do a 10 percent bond, I

 3   don't think it has to be a 10 percent bond.

 4          This would be a little bit unusual, but I think we can

 5   do $9,000,000.  Is that 45 percent?

 6          THE CLERK:  It is the way the computer is set up.  I

 7   will have to check when I go back.

 8          THE COURT:  All right.  I have no problem with that in

 9   principle.  So let's work on how we actually do that.

10          All right.  So based upon the agreement of the parties

11   and also based upon my review of the charges and the Pretrial

12   Services report and the hearing that we have had here today, I

13   am going to set $1,000,000 corporate surety bond, a $500,000

14   personal surety bond to be co-signed by the two people in New

15   Jersey where he will be living, and you will give the names and

16   address to my courtroom deputy.

17          If you do not want that to be said in open court, that

18   is fine, but it needs to be provided to my courtroom deputy.

19          We will figure out how to do the bond that you are

20   proposing.  As far as the $9,000,000 secured by 4,000,000, I

21   know I have done percentage bonds before that were not 10

22   percent, and if that can be accomplished to make it 5 percent

23   or 15 percent or 20 percent, I am sure it can be done in this

24   manner.  So I will set a $9,000,000 bond secured by $4,000,000

25   in cash.

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1266   Filed 02/24/17   Page 45 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 44 of 48

44

 1          Mr. Weil, that's money that will be deposited into the

 2     registry of the court.  As long as you comply with all of your

 3     bond conditions you will get that back with interest at the end

 4     of the case.

 5          So that's not money that is going to be lost to you as

 6     long as you comply with your conditions.

 7          He will be residing with the two people in New Jersey,

 8     so I will extend travel between the Southern District of

 9     Florida and the district, is it one district in New Jersey?

10          MR. MARCU:  One district, your Honor, but I would

11     request the Southern District of New York as well so that he

12     can travel to my office.

13          THE COURT:  Okay.  Travel will be extended to the

14     Southern District of Florida, the Southern District of New York

15     and the District of New Jersey.

16          I am going to put you on house arrest monitored by a

17     GPS system which would be more monitoring than normal.

18     Electronic monitoring instead of just letting people know when

19     you left the house, that will let people know where you are.

20          So I am going to order GPS monitoring.  You are to

21     surrender any passports immediately upon receipt.  That will be

22     coming to you, counsel?

23          MR. MARCU:  To Mr. Mandel, yes, Your Honor.

24          THE COURT:  Okay.  Surrender those passports to

25     Pretrial Services.  I am going to direct that you report to

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1267   Filed 02/24/17   Page 46 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 45 of 48

45

1  Pretrial Services in New Jersey as they direct.

2          I will leave it up to them how often.  They will have

3  advance permission from the court to allow you to leave for

4  court appearances, for attorney visits and also for any

5  necessary medical or religious purposes.

6          What I mean by that is you still have to ask them, but

7  they do not have to ask me.  If it is anything else, any other

8  travel or leaving the home, basically, they will have to check

9  with the court first, but I will give them advance permission

10  to allow you to leave for court appearances, attorney office

11  visits, medical and religious.

12          There does not appear to any need for urine testing.

13  Under the circumstances I am not going to impose an employment

14  requirement.

15          Mr. Weil, you are not to have any contact with any

16  victims or witnesses of this crime, except through your

17  attorney.

18          Mr. Daly, does that cover it?

19          MR. DALY:  I believe it does, Your Honor.

20          THE COURT:  All right.  Anything else?  Any other

21  conditions, Mr. Marcu?

22          MR. MARCU:  No, Your Honor, not at this time.  Thank

23  you.

24          THE COURT:  All right.  We are going to just have to

25  work with the Clerk's Office to make sure that this is done

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1268   Filed 02/24/17   Page 47 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 46 of 48

46

1  correctly, but I am pretty confidant that it can be.

2        I don't see why it cannot, and so we will set the bond

3  as just discussed.  We will see everybody back here on the 8th.

4  Is that what we set?

5        THE CLERK:  Judge, it is actually going to be the 7th.

6  I was looking at this year's calendar.  It is Tuesday, January

7  7th before Judge Valle.

8        THE COURT:  All right.  We will see everybody back

9  here Tuesday, the 7th in front of Judge Valle at 11:00 a.m.

10 That will be for inquiry re: counsel and if permanent counsel

11 arrangements have been made and also for arraignment.

12       MR. DALY:  Your Honor, if I may interrupt for just one

13 second.  I am not sure whether on the bond if you required the

14 defendant's spouse to sign on as well?

15       THE COURT:  Yes.  I want her signing on the $9,000,000

16 bond that will be secured by the $4,000,000 cash.

17       MR. DALY:  Thank you, Your Honor.

18       THE COURT:  All right.  Does that cover everything for

19 everyone?

20       MR. MARCU:  Yes, Your Honor.  Thank you.

21       THE COURT:  All right.  That will be the bond and then

22 we will see everybody back on the 7th, and Debbie is going to

23 figure out how to get this done in the Clerk's Office.

24       All right.  Thank you for working together and

25 resolving it.  Court is adjourned.

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1269   Filed 02/24/17   Page 48 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 47 of 48

47

1          The defendant will not be released until all of the

2     conditions are met.

3               THE CLERK:  All rise.  Court is in recess.

4               (Whereupon the proceedings were concluded)

Case 2:16-cr-20394-SFC-APP   ECF No. 51-11, PageID.1270   Filed 02/24/17   Page 49 of 49
Case 0:08-cr-60322-JIC   Document 24   Entered on FLSD Docket 12/20/2013   Page 48 of 48

48

1

2

3                        C E R T I F I C A T E

4            I hereby certify that the foregoing is an accurate

5    transcription of proceedings in the above-entitled matter.

6
     DECEMBER 19, 2013          S/JERALD M. MEYERS
7    _____          _____
         DATE                   JERALD M. MEYERS, RPR
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25