# EXHIBIT WW

2004 WL 169790
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

UNITED STATES OF AMERICA
v.
Hans BODMER, Defendants.

No. 03 CR 947(SAS).
|
Jan. 28, 2004.

**Synopsis**
**Background:** Swiss attorney arrested while in South Korea based on a sealed United States indictment charging him with conspiring to violate the Foreign Corrupt Practices Act and the Money Laundering Control Act sought bail pending trial following his extradition.

**Holding:** The District Court, Scheindlin, J., held that conditions of release were sufficient to reasonably assure the attorney's presence at trial.

Ordered accordingly.

West Headnotes (1)

[1]     **Bail**
        Imposition of conditions in general

Conditions of release were sufficient to reasonably assure the presence at trial of a Swiss attorney charged with conspiring to violate the Foreign Corrupt Practices Act and the Money Laundering Control Act, and thus, he would be granted bail pending trial, despite Government's speculation that the attorney had bank accounts outside of Switzerland, or other assets not disclosed in tax returns and an accountant statement, and that he had a strong incentive to flee because the Swiss government would not extradite Swiss nationals; there was evidence that fleeing to Switzerland would likely ruin him professionally, and if he did flee, he would lose substantial assets, and would cause serious financial harm to longtime family friends. 18 U.S.C.A. § 371; 18 U.S.C.A. § 1956(h); 18 U.S.C.A. § 3142(b), (c)(1)(B), (e).

Cases that cite this headnote

**Attorneys and Law Firms**

Robert S. Bennett, Saul M. Pilchen, Michael P. Kelly, Skadden Arps Slate Meagher & Flom, LLP, Washington, D.C., for Defendant.

Mark F. Mendelsohn, Special Assistant United States Attorney, United States Department of Justice, Washington, D.C., for the Government.

*MEMORANDUM OPINION AND ORDER*

SCHEINDLIN, J.

*1 Hans Bodmer is a Swiss national who was arrested while in South Korea on business. His arrest stemmed from a sealed United States indictment charging him with conspiring to violate the Foreign Corrupt Practices Act, 18 U.S.C. § 371, and the Money Laundering Control Act, 18 U.S.C. § 1956(h). Following his arrest, Bodmer was incarcerated in South Korea for five months, where he was unable to meet with his United States counsel. Ultimately, Bodmer consented to extradition to the United States, arriving on January 16, 2004. Bodmer now seeks bail pending trial.

**I. BACKGROUND**

   A. The Indictment
The charges in this case stem from Bodmer's alleged involvement in financial transactions relating to the privatization of the Azerbaijani national oil company. In sum, the Government alleges that as counsel to various entities, some of which are based in the United States, Bodmer paid bribes and authorized the payment of bribes to various government officials of the Republic of Azerbaijan in order to secure investments in the oil privatization. The Government further alleges than in

© 2017 Thomson Reuters. No claim to original U.S. Government Works.                              1

an effort to conceal the nature of the bribery payments, Bodmer laundered money through various bank accounts.

B. The Proposed Conditions of Release

Bodmer submits, through his family accountant, that he has a net worth of approximately $2.4 million. He has proposed the following conditions for his release:

(1) a bond in the amount of $1 million, in the form of an irrevocable standby letter of credit; [1]

(2) Bodmer will live in the Washington D.C. area with family friends;

(3) as security for the bond, the friends with whom Bodmer will reside will post their home as surety;

(3) Bodmer will surrender his passport;

(4) Bodmer will execute a waiver of extradition from Switzerland, agreeing to forego any rights he may have in Switzerland to fight return to the United States;

(5) Bodmer will agree to the Court's reporting obligations, and will wear an electronic monitor;

(6) in the event that Bodmer flees, the unused portion of his attorneys' retainer will not be returned to Bodmer or the payor of the retainer, and instead will be forfeited to the Government. [2]

II. LEGAL STANDARD

The Eight Amendment counsels that "[e]xcessive bail shall not be required." U.S. Const. amend. VIII. The release or detention of a defendant pending trial is governed by 18 U.S.C. § 3142. Pursuant to this statute, the court is required to order the pretrial release of a defendant on a bond, "unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If the court determines that release on an appearance bond is not sufficient, the court shall order pretrial release "subject to the least restrictive further condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community...." 18 U.S.C. § 3142(c)(1)(B). "If after a [detention] hearing ... the [court] finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, [the court] shall order the detention of the person before trial." 18 U.S.C. § 3142(e).

*2 In considering an application for bail, the court must first determine whether the Government has established "by a preponderance of the evidence that the defendant ... presents a risk of flight." *United States v. Friedman,* 837 F.2d 48, 49 (2d Cir.1988) (citation omitted). If the government satisfies this burden, the court must then decide "whether there are conditions or a combination of conditions which reasonably will assure the presence of the defendant at trial if he is released." *United States v. Shakur,* 817 F.2d 189, 195 (2d Cir.1987) (citing *United States v. Berrios–Berrios,* 791 F.2d 246, 250 (2d Cir.1986)). Moreover, "it is only a 'limited group of offenders' who should be denied bail pending trial." *Id.* at 195 (quoting S.Rep. No. 98–225 at 7 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v. Mercedes,* 254 F.3d 433, 436 (2d Cir.2001) (the government bears the ultimate burden of proving risk of flight by a preponderance of the evidence).

III. DISCUSSION

The Government submits that Bodmer is a flight risk, and that the collateral he has offered will not assure his presence at trial. [3] In particular, the Government believes that Bodmer's net worth exceeds $2.4 million. As a result, the prospect of forfeiting the posted collateral will not deter Bodmer from fleeing. This argument is premised on the Government's belief that the unsworn statements of Bodmer's family accountant, as well as Bodmer's Swiss tax returns, are inaccurate because they do not disclose the full extent of his assets, and do not reveal any bank accounts outside of Switzerland. The Government speculates that an accomplished Swiss attorney who specializes in offshore accounts and complicated financial transactions likely has offshore accounts himself. Yet, the Government's argument is mere speculation because it provides no *evidence* that Bodmer has any bank accounts outside of Switzerland, or any assets not disclosed in the tax returns and accountant statement.

The Government further argues that Bodmer has a strong incentive to flee because pursuant to Swiss law, the Swiss

government will not extradite Swiss nationals. Moreover, the Swiss government will not recognize Bodmer's written waiver of his right to avoid extradition. Even if this is so, this argument alone cannot be a basis for denying bail because if taken to its logical conclusion, no Swiss national would ever be eligible for bail. Moreover, even if Bodmer does flee and cannot be extradited from Switzerland, he and his family friends in Washington, D.C. will forfeit a substantial amount of money, and he will forever be unable to travel outside of Switzerland without risking extradition.

Finally, Bodmer submits that if he flees to Switzerland as a fugitive, he will be unable to return to his career as a lawyer and judge. According to affidavits submitted by Judge Suzanne Thür Brechbühl, chairwoman of an administrative tax court in the Canton of Thurgau, Switzerland, and Thomas Zweidler, President of the highest appellate court in Thurgau, if Bodmer flees while on bail and returns to Switzerland, his professional reputation will be destroyed and he will risk losing his license to practice law.

*3 Whenever a court grants bail to a defendant, there is a risk that the defendant will flee. Yet, our judicial system favors bail, and requires the Government to prove by a preponderance of the evidence that there are no conditions or combination of conditions that will reasonably assure the presence of the defendant at trial. The Government has failed to meet its burden. Its argument is based, in large part, on speculation; without any evidence to support the Government's claim, there is no support for the conclusion that Bodmer has vast financial resources in undisclosed offshore accounts. The fact that Bodmer is experienced in establishing such accounts for his clients does not necessarily mean that he employs such accounts for his own use. Moreover, while fleeing to Switzerland may allow Bodmer to forever avoid facing the Government's chrages, such an act would likely ruin him professionally. Finally, in the event that Bodmer does flee, he will lose substantial assets, and will cause serious financial harm to longtime family friends who reside in Washington, D.C.

Bodmer faces serious criminal charges, and pretrial detention may "hinder [ ] his ability to gather evidence, contact witnesses, or otherwise prepare for his defense." *Barker v. Wingo,* 407 U.S. 514, 533, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Because of the nature of the charges, the Government expects discovery to be voluminous. *See* Transcript of 1/21/04 arraignment. It will be far easier for Bodmer to assist his counsel in reviewing and responding to discovery if counsel has regular, uninterrupted access to him. Moreover, Bodmer will undoubtedly be crucial to his lawyers' understanding of the complicated financial transactions that are the subject of the indictment.

## IV. CONCLUSION

Under these circumstances, I conclude that the proposed conditions of release, as modified by the Court, are sufficient to reasonably assure Bodmer's presence at trial. Bodmer is therefore released pursuant to the conditions set forth above. His reporting obligations will include weekly in-person reports to pre-trial services and daily telephone calls. Finally, Bodmer will required to wear an electronic bracelet that will only allow him to leave the house for trial preparation, court appearances, or medical attention.

**All Citations**

Not Reported in F.Supp.2d, 2004 WL 169790

---

Footnotes

1    At the bail hearing, the Court modified the bond to $1.5 million, secured by a letter of credit and a house. *See* Transcript of 1/26/04 bail hearing ("1/26/04 Tr.").

2    At the bail hearing on January 26, 2004, Bodmer's counsel acknowledged that the retainer has been paid by an unidentified third-party, and constitutes a loan to Bodmer. *See* 1/26/04 Tr.

3    The Government concedes that Bodmer does not present a risk to any person or the community. *See* 1/26/04 Tr.

---

**End of Document**      © 2017 Thomson Reuters. No claim to original U.S. Government Works.